### JOHN RAY *v.* JOHN MURDOCK.

1. TAX-COLLECTOR'S DEED: EVIDENCE. — The Statute of 1843, chap. 1, § 6, which declares that the deed of the tax-collector "shall be *prima facie* evidence that the tax-collector performed all things required by law of him before selling the same (land), and that he was authorized by law to sell the same for taxes," has reference to the force and effect of the deed as evidence, rendering it *prima facie* evidence that the steps, required by law to make the sale of the land valid, had been taken; that is, that he was authorized by law to make the sale; and devolves upon the party controverting the title under such deed the burden of establishing by proof the omission, irregularity, or fraud, to effect its validity. The residue of the clause declaring "that said deed shall not be impeached except for some fraud, or neglect, directly charged and proved," even if it points to some direct proceeding to set aside or cancel the deed, has not the effect of excluding evidence to impeach the deed for such omission, neglect, or fraud, when offered as evidence of title in the action of ejectment.
2. COMMISSIONER TO CLASSIFY LANDS: HIS APPOINTMENT.—The Act of 1842, chap. 1, providing for the appointment of commissioners to classify lands, confers the power of appointment, in the first instance, on the board of police of the several counties, and the board of police may, under the statute, make a valid appointment, at a special term.
3. VACANCY BY DEATH OR RESIGNATION.—Although the statute gives to the board of police the power to appoint commissioners to classify lands, in the first instance, yet it seems that it makes no provision for the appointment of a suc-

cessor, in case of the death or resignation of the commissioner. The words, "shall fail or neglect from any cause," in the 11th section of the act, would seem to apply only to a case in which the officer still retaining the office, omits or refuses to complete the classification.

4. OFFICER DE FACTO: ACTS DONE UNDER COLOR OF OFFICE.—In this case, it appears that the commissioner first appointed by the board of police, resigned his office after he had commenced, and before he had completed the classification of the land of the county; and the board of police accepted his resignation, and appointed a successor, who qualified, and proceeded to complete the classification. Held, that notwithstanding the absence of power in the board to fill a vacancy thus occasioned, yet, as the board had power to appoint to the office under certain circumstances, their appointment of a successor gave such color of authority to the appointee, that as to the public and third persons, his acts as commissioner are valid as the acts of an officer *de facto*.

5. SALE OF LAND FOR TAXES BY SEPARATE SUBDIVISIONS.—It is competent for the tax-collector to sell the eighths composing a tract of land, separately, one after another, until enough is sold to pay the taxes due. He may offer one-eighth, and strike it off for the sum bid for it; and if that sum is not sufficient, he may then offer another, and so on until enough is realized to pay the taxes due.

ERROR to the Circuit Court of Copiah county.    Hon. John E. McNair, judge.

This action was brought to recover one hundred and sixty acres, or two-eighths of land, in possession of defendant.

The tax-collector's deed, relied on by defendant to defeat plaintiff's title, embraced this land in controversy, and other land, altogether amounting three thousand and sixteen acres, which it recites were sold as the property of plaintiff.

The second instruction given to the jury, at the instance of plaintiff, was as follows:—

"If the jury believe, from the evidence, that the tax-collector sold and conveyed, in said deed to Malloy, more than one-eighth of a section of land; and struck off and sold to said Malloy, each eighth of a section included in said deed, in distinct and separate lots or parcels of one-eighth of a section at one time, and another eighth at another time; and so on, until the said sale was completed, then said sale was illegal and void."

The other proceedings in the court below, are very fully stated in the opinion of the court.

*Barlow* and *King*, for plaintiff in error,

Cited 7 Bac. Ab. (Edition of 1848), 283; *People* v. *Collins*, 7 John. 549; *Burke* v. *Elliott*, 4 Iredell, 355; *Gilliam* v. *Reddick*, Ib. 368; *Buckman* v. *Ruggles*, 15 Mass. 180; *Rhodes* v. *McDonald*, 24 Miss. 418; Blackwell on Tax Titles, 113–122; *Hodge* v. *Wilson*, 12 S. & M. 500; *Boisgard* v. *Johnson*, 23 Miss. 122.

*W. Yerger*, on same side.

*Peyton* and *Mayes*, for defendant in error,

Cited *Hodge* v. *Wilson*, 12 S. & M. 500; *Hopkins* v. *Landidge*, 31 Miss. 678; *Griffith* v. *Frazier*, 8 Cranch R. 9; *Thomas* v. *Burns*, 1 Cushm. 557; *Stokes & Johnson* v. *The State*, 2 Ib. 621; *Hildreth's heirs* v. *McIntyre's devisee*, 1 J. J. Marsh, 207; Blackwell on Tax Titles, 120, 121–86; *Birch* v. *Fisher*, 13 S. & R. 208; *Pike* v. *Hanson*, 9 N. Hamp. 491; *Ainsworth* v. *Dean*, 1 Foster R. 400; *Proprietors of Cardigan* v. *Page*, 6 N. Hamp. 182; *Payson* v. *Hall*, 30 Maine R. 319; *Coit* v. *Wells*, 2 Verm. 318; *Isaacs* v. *Wiley*, 12 Ib. 674; *Bright* v. *Wood*, 1 Story's R. 478; *Wiley* v. *White*, 3 Stew. & Port, 351; *Currie* v. *Stewart*, 5 Cushm. 54; *Baskins* v. *Winston*, 2 Ib. 432; *Hulme* v. *Montgomery*, 2 Georgia, 106.

HANDY, J., delivered the opinion of the court.

This action was brought by the defendant in error, to recover a tract of land in the possession of the plaintiff in error, being one-eighth of a section of land in Copiah county.

Upon the trial, the plaintiff below showed a patent from the United States to him for the land, and rested his case.

The defendant then read in evidence, a deed from the tax-collector of that county, to Martin J. Malloy, dated in February, 1846, conveying the land in controversy, and divers other parcels of land, stated therein to have been sold to Malloy at tax-collector's sale, due for the year 1845, for the purpose of showing divestiture of the plaintiff's title; also deeds from Sellers to Robertson, and from Robertson to the defendant, to show color of title in Robertson and in defendant. He also proved, by several witnesses, the value of the land and improvements, and then rested.

The plaintiff, for the purpose of showing that Malloy acquired no title to the land by the tax-collector's deed, and that the sale of the tax-collector was illegal and void, then offered the evidence which will presently be stated ; to which the defendant objected, on the ground that the tax-collector's deed, and the title thereby conveyed, can only be impeached for some fraud or neglect charged in a direct proceeding for that purpose; but the objection was over-ruled, and the evidence admitted, the defendant excepting. This evidence is as follows : The record of the proceedings of the board of police of Copiah county, of the 21st March, 1842, showing that on that day, Edwin R. Brown was appointed commissioner of lands in that county ; and that Brown, having resigned the office, after entering upon its duties, at a regular meeting of the board, on the 25th April, 1842, William Matheney was elected to the office, and gave bond as commissioner to assess and classify the lands in the county. This evidence was offered for the purpose of showing that the appointment of Matheney was illegal, and that the classi-fication of the lands made by him as commissioner was illegal and void. The plaintiff also, for the same purpose, introduced Brown, and proved by him, that after his appointment, he undertook and discharged the duties of the office about twenty-one days, and then resigned, and received payment for the services he performed; also Matheney, who proved that he was appointed as commissioner to assess the lands, and that he proceeded to classify all the lands in the county subject to taxation, except such as had been classified by Brown, and classified the lands of the plaintiff. The plaintiff then introduced Wade, the tax-collector, who testified that sales of land for taxes in the year 1846, were made as follows: by selling one-eighth of a section at a time, and selling each eighth separately, until enough was sold to pay the taxes ; that he was tax-collector when the lands bought by Malloy were sold, and that he made the sale; that he sold no other lands, according to his recollection, in any other way than as above stated; except, that in a few in-stances, when there were fractions containing from eighty to one hundred and ten acres, he sold the whole fraction, being unable to subdivide it. And upon this evidence, the jury found a verdict for the plaintiff; and the defendant moved for a new trial, on various

grounds; which motion being overruled, the defendant excepted, and brings the case here.

The errors assigned will be stated and considered in the order in which they are presented by counsel for the plaintiff in error.

The first error assigned is to the action of the court below in admitting the evidence offered by the plaintiff, to show that the land in controversy had not been legally assessed, and in order to show that the tax-sale, by which the plaintiff's title was alleged to be divested, was void.

The objection to this evidence is founded on the Statute of 1842, ch. 1, § 28, which provides that the deed of the tax-collector, in the form therein prescribed, "shall be *prima facie* evidence that the tax collector performed all things required by law of him, before selling the same (land), and that he was authorized by law to sell the same for taxes; and said deed shall not be impeached, unless for some neglect or fraud directly charged and proved." And upon these provisions, it is insisted that it was not competent to show that a valid assessment and other things required to be done in order to a valid sale, had not taken place.

We do not consider the position tenable. It is founded on an incorrect view of the concluding part of the clause of the statute cited. The former part of the clause has reference to the *force and effect* of the deed as evidence, rendering it *prima facie* evidence that he had performed the things required by law to be done by him in order to make the sale valid, and that he was authorized by law to make the sale; that is, that the steps required by law to render the land liable to sale for taxes, had been taken. The residue of the clause must have reference to the validity of the deed in other respects, as fraud in making the sale or in executing the deed or the like. It is not clear what was intended to be the force of this provision, and what "neglect or fraud" was in contemplation; but it is clear that it cannot have the effect to destroy the rule established by the preceding part of the clause, making the deed *prima facie* evidence of the prerequisites to the validity of the sale; for that construction would render nugatory the clear and positive rule of evidence as to the *prima facie* effect of the deed, so distinctly stated in the preceding part of the clause.

We think that the deed was only *prima facie* evidence of the

authority of the tax-collector to make the sale; and, therefore, that the evidence offered was properly admitted.

The next assignment of error presents the question, whether, after the resignation of Brown, as commissioner to classify the lands under the Act of 1842, chap. 1, the board of police had power to appoint another commissioner to perform the duties remaining unfinished at the time of Brown's resignation, or whether the acts of the second commissioner so appointed are valid acts so far as the public interest is concerned and so as to render the lands subject to taxes. The negative of these propositions was given by the court in the first instruction asked in behalf of the plaintiff.

The first objection taken to this ruling of the court, is that the appointment of Brown was void, because it was made at a *special meeting* of the board of police, in March, 1842.

It is provided by the fifth section of the act, that the board shall, "*at their first meeting* after the passage of the act," appoint the commissioner to classify the lands, &c. The act was passed on the 28th February, 1842, and the meeting at which the appointment was made, was the first meeting after its passage. Special meetings of the board are authorized by law, at which business generally may be transacted. Hutch. Code, 710. And there is nothing either in the language or general object of the Act of 1842, that would restrict the appointment to a regular meeting of the board. On the contrary, the purposes of the act might render it proper to have the appointment made at an earlier day than the regular meeting of the board; for the services, which were most probably laborious, were to be completed by the first of July following, and it might have been important to have them commenced at as early a day as practicable. This objection is, therefore, without force.

The question then arises, what were the powers and duties of the board after Brown's resignation, the work remaining to be done, and what are the character and legal effect of the acts of Matheney, performed under his appointment?

No provision is made in the act for the appointment of but one commissioner, nor expressly for the death or resignation of that person, leaving the duties unperformed. The act requires, in the fifth section, that the board, at its first meeting after the passage of the act, shall appoint one honest and discreet citizen of the county, a

freeholder and householder, who shall take an oath and execute bond for the faithful performance of his duties, and shall, between the first day of March and the first day of July in the year of his appointment, determine the quality of all the lands in the county, and return his classification thereof to the clerk of the Probate Court, &c. It is manifest that the legislature intended that the important and responsible duties provided for, should be performed by some one specially selected and appointed for that purpose; and considering the importance of the trust, the failure to make any express provision for supplying the place, in the event of the resignation or death of the person first appointed, shortly after his appointment, but in time for the appointment of a new commissioner, clearly appears to be an omission. It is not to be supposed that they contemplated that duties of so much importance to the public interest, and of so great responsibility to the officer, as is imposed by the sixth and seventh sections of the act, should fail for want of a commissioner to perform them, while there was ample time to supply the place of the person originally appointed. The eleventh section, it is true, provides that if any commissioner appointed as aforesaid, *shall fail or neglect from any cause* to perform the duties required of him, it shall be the duty of the members of the board of police, respectively to perform the duties of said commissioner within their police district, and shall receive the like compensation. And it is insisted that, under this section, the duties devolved upon the members of the board, on the resignation of Brown.

But we do not think that this section contemplated such a case. The language is, if the commissioner appointed " *shall fail or neglect.* from any cause to perform the duties required of him." This language is not properly applicable to a case of resignation or death, though it may, in some cases, receive such a construction, when justified by the nature of the case and the purposes of the act, and is in keeping with the powers of the board of police, as in the case of *Morgan* v. *Harrell*, 26 Miss. 408. Both of the words employed, "fail or neglect," strictly imply the non-performance of the duties by the fault, inability, or delinquency of the commissioner, and convey the idea of his still continuing in office, and yet not performing the duties required of him. It is easy to perceive

why, under such circumstances, the performance of the duties should be made to devolve upon the members of the board of police for their respective districts, as a matter of emergency, arising from the failure or neglect of the commissioner to perform the service, until so late a period before the time when it was required to be completed, as that one man then to be appointed might not be able to complete it. But it is inconsistent with the policy manifested in the act, that, in case of the death or resignation of the commissioner immediately after his appointment, the duties so carefully required to be performed by a person to be specially chosen on account of his capacity to perform the important duties, and who was to be bound by rigid penalties for their strict performance, should be performed by persons not so selected, and not under the responsibilities required by the statute. Neither the language of the eleventh section, nor the general spirit of the act, appears to contemplate that the duties should be performed by the members of the board, except upon the emergency of the failure or neglect of the commissioner for any cause, he continuing in office, to perform his duty.

It appears that in this case, Brown resigned shortly after his appointment, and in time for another person to perform the duties within the time required by the statute; that Matheney was appointed to complete the work, and gave bond and entered upon and completed the work in due time. This appointment, and the acts of Matheney under it, it is insisted, are absolutely void, *because, upon Brown's resignation, the performance of the duties of the office devolved upon the members of the board of police*, so that there was no vacancy in the office requiring the appointment of another commissioner.

For the reasons above stated, we do not consider this a correct view of the statute, and the circumstances of the case do not bring it within the contingency provided for in the eleventh section, upon which the duties of the office were to be performed by the members of the board. It is also plain that no provision is expressly made in the statute for supplying a vacancy in such a case, and it appears manifestly to be a *casus omissus*. What then is the character of this second appointment, and the effect of the acts done under it? It is clear that it did not constitute the appointee an officer *de jure*, be-

cause the authority to make it is not conferred upon the board under the circumstances of the case. Yet it also appears that the office was vacant after the resignation of Brown, and Matheney was in the discharge of the duties appertaining to it, under an appointment of a tribunal vested with authority to appoint a commissioner under certain circumstances. There was not an absence of all power to appoint a commissioner, and hence the appointment of Matheney is but the improper exercise of a power of appointment conferred by the statute. The public could not know whether he was appointed according to the form of the statute or not; and as to them, it was sufficient that he was in the discharge of the duties of the office, under an appointment from a tribunal having power to make it. It is well settled that, under such circumstances, his acts, so far as they affect the public interest, are to be regarded as those of an officer *de facto*. He held an appointment *prima facie* valid, and performed the duties of the office by the acquiescence of the board and of the public; his services were beneficial to the public, and as such were sanctioned by the board, and they were such as an officer *de jure* would have performed. He was in under color and reputation of office, and his acts as to the public are valid. *Commonwealth* v. *Arnold*, 3 Littell, 310–316; *Wilcox* v. *Smith*, 5 Wend. 238; *Burke* v. *Elliott*, 4 Iredell, 359; *Cocke* v. *Halsey*, 15 Peters, 71; *The People* v. *Collins*, 7 John. R. 553; *Riddle* v. *Bedford County*, 7 Serg. & R. 392.

The appointment is not forbidden by the constitution nor any statute, and there is no law declaring the acts of such an officer void, and they must be taken, as to the public, to be those of an officer *de facto*, and therefore valid.

Under this view, the first instruction given by the court, at the instance of the plaintiff below, was erroneous, and should have been refused.

The last assignment of error insisted upon, applies to the rule stated by the court in the second instruction, at the instance of the plaintiff, to wit, that if the tax-collector sold and conveyed, in the deed to Malloy, more than an eighth of a section, and struck off and sold to Malloy each eighth of a section in said deed, in distinct and separate lots or parcels of one-eighth of a section at a time, until the sale was completed, said sale was illegal and void.

Ray *v.* Murdock.

In none of the cases heretofore in this court, has the question been directly presented, whether a sale by a tax-collector of several eighths of land, each being sold separately, but at the same sale and in payment of the taxes of the same individual, is legal and valid. The cases of *Hodge* v. *Wilson*, 12 S. & M. 498; *Boisgerard* v. *Johnson*, 23 Miss. 122, and *Baskins* v. *Winston*, 24 Ib. 431, were cases in which several eighths of sections had been sold together, one-eighth, when offered separately, being insufficient to bring the amount of the taxes, and sales made in that mode were held to be valid. In the opinions of the members of the court, delivered in the first of these cases, there appears to be a diversity of views as to the true construction of the statute applicable to the question, which is the same governing the rule in this case. It is clear from these opinions that a majority of the court considered the sale in that case valid; but it is not clear, from the opinion of Mr. Justice Clayton, whether he would not have considered a sale, made in the mode here presented, also valid. And his opinion, in the case of *Boisgerard* v. *Johnson*, would appear to hold that he considered it a legal sale, whether made by selling several eighths together, or by selling each one separately. For, he says, speaking of the decision in *Hodge* v. *Wilson*, "According to the opinion of the majority of the court in that case, one or the other of these two modes must be pursued, to make the sale good;" that is, as he above stated, "to offer each eighth separately; or to offer one-eighth alone, and upon failure, to get a bid for that, add another to it, and offer them together; and so on till the whole are offered." He appears to consider a sale in either of these modes good.

As the question is now directly presented, whether the sale by separate eighths is valid, we have no hesitation in saying, that such a mode of sale is clearly authorized by the language of the statute, and that the purchaser obtained a good title under it, and the instruction was erroneous.

For these reasons, the judgment must be reversed, and the cause remanded fer a new trial.

A reargument was asked for, and refused.