## BIRD *v.* STATE.

(Division B. June 3, 1929.)

[122 So. 539. No. 28028.]

*L. B. Melvin,* of Laurel, for appellant.

*J. A. Lauderdale,* Assistant Attorney-General, for the state.

ETHRIDGE, P. J., delivered the opinion of the court.

At the regular February, 1929, term of the circuit court of the Second district of Jones county appellant was convicted on a charge of burglary, and sentenced to a term in the penitentiary, from which he prosecutes this appeal. The indictment charged him with burglarizing the office of Dr. T. E. Brent, a dentist, who had an office in an office building of the city of Laurel fronting on the street. A stairway led to a hallway on the

second floor upon which the office opened. The building and office were equipped with electric lights.

A witness, employed by the city as a fireman, was near this office building some time about 6:15 or 6:20 P. M. on the 12th day of January, 1929, and saw a light flash off and on several times in Dr. Brent's office. He was then about sixty feet from the office and had a view of the windows in said office, and the light kept flashing on and off. He saw a hand of some one picking packages from the shelves in the office. He notified a policeman of the city, and he and the policeman went up the stairway and down the hall to Dr. Brent's office. This was about ten minutes from the time he first saw the lights flash in the office. When he reached the office the front door of the office was open, and defendant was coming out. The policeman asked him his name, and he told him it was Lloyd; asked him what he was doing there, and he gave a statement that he went into the office to see the doctor. The policeman arrested him and searched him at the time for weapons, then carried him to police headquarters and made a thorough search and found upon him a hacksaw, a screw driver, a paper knife with the handle wrapped, and a flash-light. After reaching the police station he was also questioned and gave his name then as Bird, and claimed he was in the business of buying gold fillings, platinum, and other materials from dentists, and reselling it to firms recasting it.

After making the search at police headquarters, the policeman and fireman, county attorney, and Dr. Brent returned to the office building and found that the door stop had been removed by some instrument by inserting it between the stop and the door frame, apparently a screw driver. They found the office ransacked, drawers opened, and a general rifling of the office, but they did not find anything missing, as the dentist had stored these valuables in a secret place. The dentist was with the policeman at the time of the last visit to the office.

The dentist testified that he closed and locked his office as he went out, and that no one had a key to his office, except the colored janitress. The janitress was introduced as a witness and testified that she did not open the office and was not up there on the evening in question.

The defendant testified in his own behalf and stated that he went up to the office for the purpose of seeing if the dentist had any of the materials, which he was engaged in buying, for sale. When he went in the office, although the light was off, he continued on to the back office; he said that very often when he called on dentists they were in the back where they have a little light with a drop shade, and when this is so you cannot tell from the front whether they are in or not. He testified that the hallway was lighted, and he passed another office which was open, and he intended to return to it on a like mission when he was arrested. He also testified that he did not see any other person in the office, and that he did not reach his hand up to shelf to take anything, and that the hand seen by the witness was not his hand, and that he did not flash the light but one time.

When the case came on for trial the regular judge, who had theretofore been acting in the district, and who held the first two weeks of the term of court in which this trial took place, had resigned, having been elected to Congress. The Lieutenant Governor, acting as Governor in the absence of the Governor, appointed a judge especially to hold this particular term of court. This special judge was not a resident of the circuit court district in which Laurel is situated, and defendant, when his case was called, filed a plea challenging the right of the state to proceed against him on account of the judge not being by his appointment a regular judge, and because it is alleged the law did not authorize the appointment of a special judge in such cases, and also because the judge so appointed was not a resident of the circuit court district.

This plea was demurred to by the state, demurrer sustained, and the trial proceeded with.

The defendant presented a special bill of exceptions which recited the circumstances of the judge's appointment, and that he was not in fact a resident and qualified elector of the district. The first contention on appeal is that the judge was not qualified to act as judge and had no jurisdiction over the defendant so as to try him. The answer of the state to this contention is that it is wholly immaterial whether the special judge was a resident of the district, or not, or whether his appointment was lawful or not, that he was at least a *de facto* judge, and that under section 3007, Hemingway's 1927 Code (section 3473, Code 1906), his actions were valid. This section reads as follows: "The official acts of any person in possession of a public office, and exercising the functions thereof, shall be valid and binding as official acts, in regard to all persons interested or affected thereby, whether such person be lawfully entitled to hold the office or not, and whether such person be lawfully qualified or not; but such person shall be liable to all the penalties imposed by law for usurping or unlawfully holding office, or for exercising the functions thereof without lawful right, or without being qualified according to law."

The Constitution does not provide in terms that the judges shall be residents and qualified electors of the district for which they are elected or appointed, but the statute provides that a judge shall reside in his district, and the Constitution provides that all officers must be qualified electors. In the case of the appointment of a special judge the Constitution and statutes are both silent as to whether the judge shall reside in the district or not. It has long been the practice of the executive department to appoint special judges to try special cases or to hold special terms of court without regard to whether they were resident of the district or not, and

such judges and officers acting as special judges in such cases often have not been residents of the district in which they hold the terms of court. It is well settled in this state that the acts of a *de facto* judge are valid, regardless of whether he was properly appointed or qualified or not, and we deem it unnecessary to pass upon the question as to whether the judge should have been appointed from the resident attorneys of the district, and whether or not the effect of his appointment, under the laws, was to hold until an election was held or only until the special term of the court was over. But the appellant was not in position to challenge his right to hold office, the right to question his holding the office being for the state alone to raise in appropriate proceeding. See *Brady* v. *Howe*, 50 Miss. 607; *Powers* v. *State*, 83 Miss. 691, 36 So. 6; *State* v. *Boykin*, 114 Miss. 527, 75 So. 378; *Altman & Co.* v. *Wall*, 111 Miss. 198, 71 So. 318; *Ray* v. *Murdock*, 36 Miss. 699; *Vicksburg* v. *Lombard*, 51 Miss. 111.

Appellant next insisted that it was error to introduce the hacksaw, screw driver, letter opener, and flash-light because there was no authority for making this search, and it violated the provisions of section 23 of the Constitution, and that there is no statute authorizing the search of a person. It is well settled that an officer may make an arrest for a misdemeanor committed in his presence without a warrant, and also may arrest for the commission of the felony, whether in his presence or not, if a felony has been actually committed and there is probable cause for the officer to believe that the person arrested committed it, and where an arrest has been made the officer has the right to make the search of the person of the defendant as an incident to the arrest for the purpose of depriving him of means of effecting his escape, and for the purpose of obtaining evidence of the commission of the crime or in reference to the proof of the

offense for which he has been arrested. The instruments found upon the person of the appellant at the time of his arrest were such as would facilitate his escape and it was legal to make the search, and the court committed no error in permitting the introduction of the evidence in regard thereto.

Appellant next insisted that the evidence is insufficient to sustain a conviction in that the proof does not sufficiently show that the appellant broke into the office. The contention of the appellant is that the office might have been opened by some one else. Taking all the facts together we regard the proof as ample to show the forcible entry of the building. The doctor testified that he closed and locked his office. The door stop had been prized off by some instrument evidently of the same character as the screw driver found upon the person of the appellant. The appellant was in the office, which was dark, with a flash-light flashing the light on and off, and evidence tends to show that he reached up on a shelf and took something therefrom; also the fact that when he was accosted about being in the office by the policeman he gave a false name which he afterwards corrected. The appellant's evidence as to his entry of the building is sufficiently contradicted to make it a question for the decision of the jury whether he burglariously entered the building or not. We find no error in the trial of the cause, and the judgment of the court below is affirmed.

*Affirmed.*