GOYER COMPANY *v.* HENDERSON.

No. 41789          April 10, 1961          128 So. 2d 569

*Norman C. Brewer, Jr.,* Greenwood, for appellant.

*Bell & McBee,* Greenwood, for appellee.

GILLESPIE, J.

Appellee, Henderson, sued appellant, The Goyer Company, a corporation, for breach of implied warranty, and alleged that appellant sold appellee a drum of cotton picker spindle oil for use in appellee's cotton picker and impliedly warranted that the oil was fit, proper and suitable for use in a certain cotton picker known by appellant to be owned by appellee and for which the oil was purchased. It was alleged that appellee used said oil and that it was not fit and proper for use in said cotton picker and failed to properly lubricate it, and as a direct and proximate result of the failure of said oil to properly lubricate said cotton picker, it was damaged. Damages were claimed for the costs of repair and loss of use

of said cotton picker for ten days. From a verdict for appellee and a judgment for $2,000, appellant appeals.

The sole question in this case is whether there was proof sufficient to sustain the finding that the oil sold appellee by appellant caused the damage to the cotton picker. We hold that there was not.

The issues made by the pleadings and which were necessary for appellee to recover were: (a) That appellant sold appellee a drum of cotton picker spindle oil; (b) appellant impliedly warranted the oil was suitable and proper for use in the particular cotton picker owned by appellee; (c) appellee relied upon the said warranty; (d) the oil was not suitable and proper for use in the cotton picker, and (e) as a direct and proximate result of the unsuitability of the oil for such use the cotton picker was damaged.

Appellant concedes the proof established issues (a), (b) and (c).

Appellee owned a 1955 model, John Deere No. 1, One-Row Cotton Picker. A mechanical overhaul job was completed on August 27, 1956, and the machine was put in operation and operated satisfactorily until September 15, 1956. During this period appellee used International Lubricant Company oil. On September 14, 1956, appellant sold appellee a drum of oil for use in the cotton picker and impliedly warranted that it was fit and proper for that particular machine. No mention was made of the weight of oil. The oil sold by appellant to appellee had on the drum, "The Goyer Oil Company Cotton Picker Oil, SAE 10, 100% Parrafin free." Appellee began using the Goyer Oil on the morning of September 15, 1956, and that same afternoon began having trouble with the machine. He had to replace some spindles and other parts on September 17, 20, 24 and 27, and on this last date ceased using the Goyer oil. The machine was performing badly and getting progressively worse from the afternoon of September 15 until October 1 when he took

it to a repairman where it was overhauled at a cost of $461.39. He spent a total of $553.45 in repairs and the machine was redelivered to appellee on October 6, 1956. Total loss of time that the machine was out of service was ten days, including parts of days prior to the general overhaul beginning October 1. After appellee began using the machine after the repairs were completed on August 6, 1956, and while oil other than Goyer oil was being used, appellee had further mechanical trouble, the same trouble he had before the general overhaul, and the machine was again overhauled in January 1957.

The proof showed that the manufacturer of the cotton picker recommended the use of 20 weight oil when the temperature was above 80 degrees F., and 10 weight oil when the temperature was below 80 degrees F. There is no proof of the temperature when the oil was sold or used. One repairman recommended use of 10 weight oil in that particular machine. Appellee introduced a witness under whose supervision a sample of the Goyer oil was tested and he testified it was 20 weight oil.

Considerable testimony was offered with reference to sight control valves which controlled the flow of oil to the spindles and which the operator of the machine must adjust, but we think it unnecessary to detail this evidence.

██ ██ Whether the oil was unsuitable and whether the oil caused the damage to appellee's machine, issues (d) and (e) listed above, may be considered together. The case turns on the failure of appellee to prove his case on these two related factual issues. The burden was on appellee to prove the oil was not suitable and proper for use in said machine and that the damages to the machine was caused by the oil, and such facts must be established by a preponderance of the evidence. In such regard the judgment may not be based on speculation or suspicion. 77 C. J. S., Sales, Section 367, pages 1297, 1304; Missouri

Bag Co. v. Chemical Delinting Company, 214 Miss. 13, 58 So. 2d 71, 33 A.L.R. 2d 501.

Appellee did not attempt to testify as to what caused the damage to his machine. He offered two witnesses in an effort to prove the cause of the damage. Witness Purcell testified that he was presently service manager of Wade Hardware Company, which firm overhauled the appellee's cotton picker in August 1956, and again on October 1, 1956 (after using the Goyer oil). Witness was a mechanic for Wade Hardware Company in 1956. He saw the machine and did some work on it after September 15, 1956, and before the general overhaul on October 1. He said he replaced some worn out bearings and spindles. He did not do the general overhaul work beginning on October 1, which consisted of replacing spindles, bushings, collars, gears and pins. He was asked what would cause spindles to wear out and he answered: "It could be a group of items that could cause it, the lack of oil or improper weights of oil could cause it." As to the cause of bushings wearing out, he testified: "It could be the lack of oil, or it could be a number of items that could cause it." He further testified that the bushings could wear out because of "improper amount of oil, improper weight, it could be improper doffer adjustment." He testified that improper moisture or bad adjustment could cause spindles to wear out. He said the improper adjustment of the oil dripper could also cause the spindles to wear out. He never did say what caused the damage to the machine requiring the repairs from September 17 through October 6, 1956. He said 20 weight oil is heavier than 10 weight, and if the temperature is above 75 degrees, 20 weight oil gives better lubrication and when the temperature is below 75 degrees, you get better lubrication with 10 weight oil. He stated that Wade Hardware Company recommends to its customers that they use 10 weight oil because during most of the cotton picking season the temperature is below 75 de-

grees. As stated, no one testified what the temperature was when appellant sold appellee the oil here involved.

Appellee introduced witness Clark who testified that he was a mechanic for Wade Hardware Company when appellee's cotton picker was overhauled beginning October 1, 1956, and he did part of the work including that on the spindles and bushings which were worn out. He was asked what caused the spindles and bushings to wear out and he answered that it could be not getting the right lubrication or the right oil; that it could be improper oil, or the lack of oil. As to what caused the particular damage to this machine, he stated that he did not know.

The jury was justified in finding that the oil sold appellee was 20 weight oil, but there is no proof that 20 weight oil probably caused any damage to the machine. The jury necessarily had to resort to speculation, guess and conjecture as to the cause of the machine wearing out. This is not sufficient to sustain the judgment. The record reveals that plaintiff failed in his proof and the peremptory instruction should have been given appellant.

Reversed and judgment here for appellant.

*McGehee, C.J.,* and *Kyle, Arrington* and *Ethridge, JJ.,* concur.