BRADY, Justice:
Suit was instituted by Charles E. Baker against The Chrysler Motor Company in the Circuit Court of Jackson County to recover damages for an alleged breach of a five year-50,000 mile warranty issued by appellee on an automobile ultimately purchased by appellant. A jury verdict for $5,000 was returned in favor of appellant. From the action of the trial court in granting a new trial, this appeal is prosecuted.
Appellant urges that the lower court erred in sustaining appellee’s motion for a new trial. Appellee urges that the trial court should have granted its request for a peremptory instruction since appellant wholly failed to prove: (1) That appellee had not honored the warranty; (2) that any part of the car which appellant purchased was defective; and (3) that ap-pellee refused to repair any defective part in accordance with the terms of the expressed warranty. While not formally perfected as such, we treat appellee’s position here as that of a cross appeal. The facts essential for determining the rights of the litigants are as follows.
On July 27, 1965, appellant purchased from the Auto Bargain Center, hereinafter designated as A. B. C., of Mobile, Alabama, a car which had been formerly sold and delivered to Bill Pruitt on March 10, 1965, in Brooksville, Florida. The car was a 1965 red Dodge Coronet for which appellant páid $2,710, less a trade allowance of $600 on his 1959 Rambler. The $2,110 necessary to complete the purchase was borrowed from the Merchants & Marine Bank of Moss Point, which issued its cashier’s check in that amount to A. B. C. Appellant thereafter made eleven monthly payments in the sum of $71.25 each on the amount borrowed from the Merchants & Marine Bank.
Appellant used the newly purchased car in driving back and forth from his home in Escatawpa, Mississippi, to his work at the Ingall’s Shipbuilding Corporation. He made one trip to Jackson, Mississippi, and two trips to the missile base in Hancock County. On August 13, approximately eighteen days after he had purchased the car, he noticed that the engine started rattling as he was returning from a trip to Hancock County. The following morning he took the car back to Mobile, stating at the time that the car “just would go.” He first took the car to A. B. C. but was advised to go to Gulf Coast Motor Company, a Dodge dealer in Mobile. At Gulf Coast Motor Company appellant presented the warranty which he had been given when he purchased the car. The warranty was improperly signed, but an employee of the dealer, after calling Atlanta, Georgia, verified the accuracy of the warranty. A new warranty was then signed and delivered to appellant. The warranty was signed by Dwight Smith, the Dodge representative, and the validity of the warranty is not in issue. Appellant was told that since it was Friday and Gulf Coast Motor Company *814 would not be open on Saturday, he could obtain his car the following Monday. He was advised not to move the car until it was fixed.
On August 16, the following Monday, appellant returned to Gulf Coast Motor Company but could not locate his car. He ascertained that the car had been carried back to A. B. C. the preceding Saturday. The following Friday, August 20, he again went to Gulf Coast Motor Company and was told that they knew nothing about his car. However, he learned that it was at Barnes Motors in Mobile where it was being repaired. Appellant went to Barnes Motors where he saw that the motor was being worked on and the car was not ready. Appellant testified that Barnes Motors advised him that they would notify him by telephone the following Wednesday if the car was ready. Appellant stated at the trial that he had not seen his- car since that date.
No effort was made by appellant to reclaim his car, and at the time of the trial apparently neither appellant nor appellee knew where the car was located. Appellant testified on direct and cross-examination that after he made the last trip to Mobile and saw his car in the process of being repaired, he turned his claim over to his attorney. Appellant unequivocally asserted that since August 20 he had never seen the car.
The record discloses that the repairs were made in accordance with the warranty at a cost of $128.88, in which amount Barnes Motors has been reimbursed by The Chrysler Corporation. The repairs consisted of replacing all six pistons, the rings and rod bearings and an oil filter, all of which had been damaged by overheating and expansion due to a lack of water in the radiator. The record further discloses that Ben Ferguson, service manager of Barnes Motors, wrote two letters to appellant at his home address in Escatawpa, advising him that the car had been repaired.
After the court had adjourned, Mr. F. Ernest Smith, who was employed by the Dodge Division of The Chrysler Corporation as regional service manager and who had previously validated the warranty, drove to Mobile, Alabama, and ascertained that Barnes Motors had delivered the car to A. B. C. after appellant had failed to claim it and that it was on a storage lot in that city. Obtaining permission from A. B. G, Smith went to the lot and found the car. The left front vent glass had been broken, and Smith was able to open the door and verify the serial number and the speedometer reading. It was evident that the car had been sitting on the lot for a considerable period of time arid had deteriorated, but it had only ten miles more registered on the speedometer than the 1,-300 it showed when appellant had originally delivered it to A. B. C.
Appellant in his declaration sought to recover damages in the sum of $2,710 for breach of warranty, $5,000 for actual damages, $2,000 for inconvenience and loss of use of the car and $2,000 for attorneys’ fees, making a total demand of $11,710. The jury returned a verdict for $5,000.
There is only one issue in this case and that is whether appellant sustained a cause of action against appellee for breach of warranty. The warranty here involved provides, in parteas follows:
Chrysler Corporation; as manufacturer, warrants each new passenger car manufactured by it, including all equipment or accessories (except tires) manufactured or supplied by it, to be free from defects in material and workmanship under normal use and service for twelve thousand (12,000) miles of operation or twelve (12) months after delivery to the original purchase, whichever event occurs first.
In addition, Chrysler Corporation warrants the engine block, head and all internal engine parts * * * to be free from defects in material and workmanship under normal use and service for fifty thousand (50,000) miles of operation or five (5) years after delivery to *815 the original purchase, whichever event occurs first. * * *
Chrysler Corporation’s obligation under this warranty is limited to repairing or replacing at its option, any part or parts of the passenger car that prove to be defective within the applicable provisions of this warranty. * * *
* * *
This warranty is the only warranty applicable to passenger cars manufactured by Chrysler Corporation and is expressly in lieu of any warranties otherwise implied by law (including, but not limited to, implied warranties of merchantability or fitness for a particular purpose). The remedies under this warranty shall be the only remedies available to any owner thereof or other person, and neither Chrysler Corporation, Chrysler Motors Corporation nor the authorized selling dealer assumes any other obligation or responsibility with respect to the condition of the passenger car, and neither assumes, nor authorizes anyone to assume for any of them, any additional liability in connection therewith.
This warranty contains the usual coverages and exceptions. Under the exceptions it is provided that the warranty does not apply to any passenger car that shall be subject to misuse, negligence or accident. Appellee did not seek to avoid responsibility for repairing the car under this or any other exception to the warranty. The record discloses that appellee was not only willing to abide by its warranty, but did in fact fulfill all contractual duties owed by it to appellant.
On cross-examination appellant was asked the following questions with reference to whether he had read the warranty:
“Q You have some of the terms on the back there, of Exhibit No. 2, is that correct?
“A (No response)
“Q Have you read them now?
“A Yes, sir.
* * *
“Q I understand that; this next paragraph states that the Chrysler Corporation’s obligation under this warranty is limited to repairs or replacement at its option any part or parts of the passenger car that prove to be defective?
“A Yes, sir, it says that.
“Q And the next paragraph does it also state that this warranty shall only apply to passenger cars, shall not apply to any passenger car that shall have been subject to misuse, negligence or accident, does that warranty say that?
“A Yes.
“Q In the last paragraph of the warranty does it say this warranty is the only warranty applicable to passenger cars manufactured by Chrysler Corporation and is expressly in lieu of any warranties otherwise implied by law ?
“A Yes, sir.
“Q And your law suit is based upon breach of the warranty and certain breaches you testified about, is that correct? This whole law suit is about Chrysler not doing what they said they would do on that piece of paper, is that right?
“A That’s right.
“Q And can you say whether or not Chrysler has repaired this car?
“A I can not.”
Furthermore, appellant’s wife testified as follows:
“Q As I understand, the last time you saw this car was the latter part of August of last year, is that right?
“A Yes, sir.
*816 “Q You ever receive any letters from the Barnes Motor Company about the car?
“A No, sir.
“Q Do you know whether or not the car has been repaired?
“A No, sir.”
Appellant wholly failed to prove that appellee did not comply with the requirements of its warranty. In fact, appellant failed to prove defectiveness either in the parts of the car or in the workmanship. To the contrary, the proof shows that ap-pellee complied with its warranty in every particular. Nowhere in the warranty can it be found that appellee' was under any obligation to deliver the car to appellant after the repairs had been completed. The Court takes judicial notice of the fact that intelligent men will use diligence to keep their property and see that it is protected. Certainly the facts in this case do not indicate that appellant used such diligence. It is apparent that appellant, after determining that he had a cause of action, instead of doing all that he could to minimize his damages, did just the opposite.
Barnes Motors wrote appellant on two different occasions to inform him that the repairs had been completed and the car was ready to be picked up. Neither letter was returned as undelivered. Under the circumstances, Barnes Motors did what is ordinarily done in such cases, namely, placed the car in storage. Certainly this did not constitute negligence on its part. Conceding that Barnes Motors failed to discharge a duty it owed to appellant, which we do not concede, certainly such failure cannot be charged to appellee here.
The trial court was eminently correct in sustaining appellee’s motion for a new trial since the evidence was insufficient to justify the jury’s finding that there had been a breach of warranty. Foster v. Copiah County Co-Op., 246 Miss. 218, 148 So.2d 702 (1963). Appellant had the burden of proving by a preponderance of the evidence that the warranty had been breached, and a verdict so finding could not be based upon mere speculation or suspicion. Goyer Co. v. Henderson, 240 Miss. 709, 128 So.2d 569 (1961); Missouri Bag Co. v. Chemical Delinting Co., 214 Miss. 13, 58 So.2d 71, 33 A.L.R.2d 501 (1952); 77 C.J.S. Sales § 367 (1952).
Inasmuch as the evidence developed in the first trial absolved appellee from any liability on its warranty, we have concluded that it would be a vain and futile thing to remand this case for a new trial. We therefore affirm the case on direct appeal and reverse on cross appeal and enter judgment here for appellee and cross appellant, The Chrysler Motor Company.
Affirmed on direct appeal; reversed and rendered on cross appeal.
GILLESPIE, P. J., and RODGERS, PATTERSON and SMITH, JJ., concur.