346 So.2d 921 (1977)
Lola CROCKER
v.
SEARS, ROEBUCK AND COMPANY.
No. 49987.
Supreme Court of Mississippi.
June 1, 1977.
*922 Laurel G. Weir, Philadelphia, for appellant.
Daniel, Coker, Horton, Bell & Dukes, Roger C. Clapp, Jackson, for appellee.
Before PATTERSON, SUGG and WALKER, JJ.
WALKER, Justice, for the Court:
Lola Crocker brought this action for breach of warranty in the Circuit Court of Neshoba County, Mississippi, seeking to recover damages resulting from the destruction of her home by a fire allegedly caused by an alleged defect in a stove she purchased from Sears, Roebuck and Company. At the close of her evidence, the trial court directed a verdict in favor of the defendant. We affirm.
Mrs. Crocker contends that County Judge H.C. "Mike" Watkins of Lauderdale County, Mississippi, had no authority to sit as a special circuit judge of the Eighth Judicial District, and that the court's judgment against her is therefore void. The source of Judge Watkins' authority is not apparent on the face of the record. It is unclear whether he claimed his position by virtue of Mississippi Code Annotated section 9-1-13 (1972), which provides for the appointment of special judges, or by virtue of Mississippi Code Annotated section 23-5-247 (1972), which provides for the filling of vacancies in judicial offices. In any event, Mrs. Crocker cannot raise the question of Judge Watkins' qualifications before this Court. Judge Watkins was at least a de facto circuit judge of the Eighth Judicial District, and Mississippi Code Annotated section 25-1-37 (1972) makes his acts valid against all persons affected thereby:
The official acts of any person in possession of a public office and exercising the functions thereof shall be valid and binding as official acts in regard to all persons interested or affected thereby, whether such person be lawfully entitled to hold the office or not and whether such person be lawfully qualified or not ...
It is clear to us that Judge Watkins was at least a de facto officer. This court adopted the following definition of a de facto officer in Adams v. Mississippi State Bank, 75 Miss. 701, 725, 23 So. 395, 398 (1898), most recently approved in Raper v. State, 317 So.2d 709, 711 (Miss. 1975): "An officer de facto is one who exercises the powers and discharges the functions of an office, being then in possession of the same under color of authority, but without actual right thereto." There is nothing in this record from which we can conclude that Judge Watkins, a duly installed county judge, was without at least color of authority to sit outside his district, and we therefore conclude that he was at least a de facto judge.
A virtually identical situation appears in Bird v. State, 154 Miss. 493, 122 So. 539 (1929). In that case, the regular circuit judge had resigned after his election to Congress. The acting Governor appointed a special judge, who was not a resident of the district, to serve in his place. It is interesting to note that in that case the appellant objected at trial to the judge's authority to hold court, and filed with this Court a bill of exceptions reciting the circumstances of the judge's appointment. Neither one of those steps was taken in this case. Despite the appellant's efforts, the court, relying on the statutory provision now found in Mississippi Code Annotated section 25-1-37 (1972), held that the appellant could not complain of having been tried before a de facto judge. We reach the same conclusion in this case as the Court reached in Bird:
It is well settled in this state that the acts of a de facto judge are valid, regardless *923 of whether he was properly appointed or qualified or not, and we deem it unnecessary to pass upon the question as to whether the judge should have been appointed from the resident attorneys of the district, and whether or not the effect of his appointment, under the laws, was to hold until an election was held or only until the special term of the court was over. But the appellant was not in [a] position to challenge his right to hold office, the right to question his holding the office being for the state alone to raise in an appropriate proceeding. (Id. at 500, 122 So. at 540).
We hold that Mrs. Crocker cannot complain of having her case heard before Judge Watkins.
Mrs. Crocker's other assignment of error is that the court erred in granting a directed verdict for Sears. She contends that her evidence was sufficient to reach the jury. In their briefs, the parties dispute whether Mrs. Crocker's action was based on the implied warranty of merchantability found in Mississippi Code Annotated section 75-2-314 (1972), an express warranty as governed by Mississippi Code Annotated section 75-2-313 (1972), or a tort theory of products liability. It is unnecessary for us to determine the precise nature of Mrs. Crocker's suit. Whether her action sounds in warranty or in tort, she still must prove that the defect in the product caused the damage of which she complained. Annot., 80 A.L.R.2d 598 § 18 (1961). Mrs. Crocker failed to introduce evidence from which the jury could have inferred that the destruction of her house was caused by a defect in her stove.
Mrs. Crocker testified that the stove would always be hot and would not cool down. It would make a racket and smoke when she turned it on. "It smelled like something that was going to burn." We need not consider whether the jury could have determined from this testimony that the stove was defective, because there is no evidence from which they could have concluded that the alleged defect caused the fire. Mrs. Crocker's testimony about the cause of the fire is reproduced at length:
A. I had lay down in my bedroom, which adjoins the kitchen, to the left of the kitchen... . I was awakened by some kind of a racket.
Q. Where was the racket coming from?
A. From the kitchen.
Q. What part of the kitchen?
A. It sounded like the stove.
Q. Now, then, what did you do?
A. Well, I tried to get up... . I pushed myself up off of the bed, and I saw the flames coming.
Q. Where was the flames coming from?
A. Through the window that  there was a window about two or two and one-half foot square over the stove that went in towards my bedroom, and that's where the flames was coming in, through there.
.....
Q. Well, after you looked there, could you see where the flames began and started from?
A. All I could see the flames 
BY MR. CLAPP:
We object, Your Honor.
BY THE WITNESS:
 was coming from where the stove was, coming in my room, through the window, and it was smoke everywhere. You couldn't see anything.
BY THE COURT:
Over-ruled.
Mrs. Crocker introduced no other evidence relating to the cause of the fire.
Furthermore, at least two other possible causes of the fire are revealed by the testimony. Mrs. Crocker testified that, at the time of the fire, the house was in the process of being remodeled and that it had been completely rewired. Moreover, Sears merely delivered the stove; they did not install it. The fire might well have arisen from negligent installation rather than defective manufacture. In the light of this evidence, the jury would have to engage in pure speculation to conclude that the fire was *924 caused by the defective manufacture of the stove.
In the past, this Court has not hesitated to reverse awards in favor of buyers in warranty cases where there was no evidence connecting the damage to the defect. In Goyer Co. v. Henderson, 240 Miss. 709, 128 So.2d 569 (1961), the plaintiff contended that his cotton picker was ruined by the use of a faulty grade of oil recommended by the seller. In that case, the plaintiff introduced much more evidence than Mrs. Crocker did here, including the expert testimony of two mechanics. As to the cause of the damage, one mechanic testified: "It could be the lack of oil, or it could be a number of items that could cause it." Id. at 715, 128 So.2d at 571. Thus, as here, the evidence revealed several possible causes of the damage, and this Court held it improper to allow the jury to guess which the cause might have been:
The jury necessarily had to resort to speculation, guess and conjecture as to the cause of the machine wearing out. This is not sufficient to sustain the judgment. The record reveals that plaintiff failed in his proof and the peremptory instruction should have been given appellant. (Id. at 716, 128 So.2d at 571).
See also Newton Coca-Cola Bottling Co. v. Shaw, 236 Miss. 890, 112 So.2d 374 (1959).
Since Mrs. Crocker failed to introduce evidence from which the jury could reasonably conclude that a defect in her stove caused the fire which destroyed her house, the trial court acted properly in directing a verdict in favor of Sears. There being no further assignments of error, the judgment must be affirmed.
AFFIRMED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG and BROOM, JJ., concur.
LEE, J., took no part.