Missouri Bag Co. *v.* Chemical Delinting Co.

Apr. 14, 1952.

No. 38321 (58 So. (2d) 71)

**Sams & Jolly,** for appellant.

18

19

W. J. Threadgill, H. T. Carter, and John H. Holloman, for appellee.

21

22

Kyle, J.

The Missouri Bag Company, a nonresident corporation as plaintiff, sued the Chemical Delinting Company, defendant, in the Circuit Court of Lowndes County for a balance of $2,712.13 alleged to be due and owing to the plaintiff by the defendant on the purchase price of 17,000 Osnaburg bags sold and delivered by the plaintiff to the defendant during the month of December 1949. The defendant, in its answer to the plaintiff's declaration, admitted liability for the amount alleged to be due for the four shipments of bags referred to in the plaintiff's declaration, but alleged by way of recoupment and offset against the plaintiff's claim, that the defendant was entitled to a credit of an amount equal to the balance alleged to be due in the plaintiff's declaration as damages for a breach of warranty of quality on account of the shipment to the plaintiff of 19,000 bags during the preceding February, which were found to be defective in quality and in part unfit for use. The case was tried before a jury and a verdict was returned for the defendant and judgment entered thereon. From that judgment the plaintiff prosecutes this appeal.

The Sales Contract, under which the bags were delivered, was dated August 13, 1948, and provided for the sale by the plaintiff to the defendant of 50,000 bleached and filled Osnaburg bags to be shipped from September

through December 1948 from the plaintiff's warehouse at St. Louis, Missouri. The price to be paid for the merchandise was $252.75 per thousand. The contract provided that certain printing should be done on the bags in three colors, subject to quantity differentials; shipments were made under the contract from time to time over a period extending through December 1949 and payments were made for all bags delivered prior to the dates of delivery of the 17,000 bags mentioned in the plaintiff's declaration. The total invoice price of the 17,000 bags delivered in December 1949 was $4,902.31. The amount attached to the declaration showed a memorandum credit of $190 and a payment on the account of $2,000 leaving a balance due of $2,712.31.

J. H. Pollyea, the vice president of the Missouri Bag Company, plaintiff, testified as the only witness for the plaintiff. Pollyea testified that the plaintiff received shipping instructions from the defendant during the month of December 1949 for the shipment of the 17,000 bags and that the bags were immediately manufactured and shipped to the defendant; that the last shipment under the December 1949 order was made on December 17, 1949; that the account became due on December 27, 1949; that one payment in the amount of $2,000 had been made on the account on May 31, 1950; and that the additional credit of $190 had been allowed in an effort to make an adjustment of the controversy involved in the claim for recoupment set out in the defendant's answer.

Pollyea testified that the only complaint that he had received concerning the defective condition of the bags shipped to the defendant during the month of February 1949, was a verbal complaint which had been relayed to him by one Milton Yawitz, who was interested in the Chemical Delinting Company, and who told him that Mr. Edgington, the president of the company, was dissatisfied with some of the bags that had been shipped to the defendant; that he had finally talked to Mr. Edgington on the telephone, and had agreed to make an allowance in

settlement of the claim, and that pursuant to that agreement he had entered a credit of $190 on the account for the bags shipped to the defendant in December 1949. The bags which defendant claimed were defective had been shipped during the month of February 1949, and had been paid for on March 10, 1949.

Earl M. Edgington, president of the Chemical Delinting Company, testified that 17,000 bags shipped to the Chemical Delinting Company during the month of December 1949 were received by the Chemical Delinting Company pursuant to the contract entered into on August 13, 1948, and that the 17,000 bags received during the month of December were entirely satisfactory. The complaint of the Chemical Delinting Company related entirely to the defective condition of the 19,000 bags which had been shipped to the Chemical Delinting Company during the month of February 1949. The bags were shipped in bales of approximately 1,000 bags each; and the 19,000 bags received during the month of February were paid for without any inspection being made of the bags at that time. Edgington stated that one bale was opened during the month of April 1949, and that he found that the bags had holes in them; that while he was in St. Louis during the early part of June he told Mr. Pollyea that he had discovered holes in the bags; and that Pollyea expressed the opinion that the other bags which had been included in the February shipments would be found to be satisfactory. Edgington stated that the remaining 18,000 bags contained in the February shipment were not opened or examined until the following December or January; and that he then discovered that the bags were mixed in the bales, and that the bags had holes in them.

Edgington admitted that he never wrote any letter to the Missouri Bag Company concerning the defects in the bags, until after the lapse of more than a year from the date of receipt of the bags, and that he never offered to return any of the bags. He was asked whether all of the bags were serviceable, and in answer to that question he

said: "Well, we used them. * * * We used them to ship seed in." He stated that some seed were lost in the handling and transportation of the seed to their customers, but could not say what the loss amounted to. He stated that many complaints were received from their customers on account of the defects in the bags, and stated that 94,000 pounds of seed were returned to him during the 1950 delinting season, and he estimated that one-half of that total amount had been returned because of the defective condition of the bags. In a letter addressed to the Missouri Bag Company on June 12, 1950, which was introduced in evidence, Edgington said: "We have paid several small claims for weight shortages since these shipments, and never in the history of our business have we had such complaints before. Edgington was permitted to state to the jury that he felt that he had paid to the plaintiff everything that he owed the plaintiff.

The defendant's office manager testified that she discovered the latter part of February 1949 that the bags which they were receiving at that time had holes in them. She testified that numerous complaints were received by the defendant from its customers during the following winter after the bags had been used, and she estimated that approximately 100,000 pounds of seed were actually returned to the defendant by dissatisfied customers. On cross-examination she stated that when she discovered that seed was being shipped in bags that had holes in them she reported the matter to Mr. Edgington. The defendant's foreman testified that the bags which he observed had holes in them, and in the bags returned there had been a loss of five, ten or fifteen pounds of seed per bag. He stated that he had repaired some of the defective bags, but did not know how many. On cross-examination he stated that he had noticed that there were holes in the bags during the spring of 1949, and that he reported that fact to Mr. Edgington, but he continued to use the bags. He stated that he repaired the large holes, but not the small holes. Two of the defendant's salesmen

testified that they had received numerous complaints from their customers in 1950 about the holes in the bags in which seed had been shipped.

The appellant's attorneys argue four main points on this appeal: (1) That the defendant was not entitled to recover damages on account of the defective quality of the 19,000 bags received during the month of February 1949, for the reason that the defendant had accepted the bags and paid for the same with full knowledge of their condition and had thereby waived its right to allege a breach of implied warranty of quality, and for the reason that the defendant had never offered to return the bags to the plaintiff after the defendant had discovered the alleged defects in the bags, but had continued to use the bags with full knowledge of their condition; (2) that the damages which the defendant sought to recoup were not proximately caused by the alleged defects in the bags, but by the defendant's own negligence in continuing to use the bags after the defendant had discovered that the bags had holes in them; and (3) that the damages sought to be recovered were so indefinite, uncertain and speculative that they could not be ascertained with any reasonable degree of certainty, and that the appellee made no effort to mitigate the damages. The appellant's attorneys also contend that there were reversible errors in the instructions, which will be referred to later.

 There was no express warranty in the written contract for the sale of the bags, but there was an implied warranty on the part of the appellant, the manufacturer, that the bags would reasonably perform the services for which they were manufactured and sold.

A manufacturer who sells goods of his own manufacture impliedly warrants that they are free from any latent defects growing out of the process of the manufacture. 46 Am. Jur. p. 542, Sales, Sec. 356.

 Where an article to be manufactured by the seller is ordered for a particular purpose disclosed to him, there is an implied warranty that the article is free from

defects arising out of defective material selected by him as well as defective workmanship which will render the article unfit for the purpose intended. Rodgers v. Niles, 11 Ohio St. 48, 78 Am. Dec. 290. See also Annotations, 22 L. R. A. 192, 102 Am. St. Rep. 615.

Since there was an implied warranty on the part of the appellant that the bags to be delivered under the 1948 contract would be of sound quality, free from defects and suitable for the uses to which they were to be put by the purchaser, ██ ██ if the bags delivered did not fulfill the warranty, two remedies were open to the purchaser after he had received the bags. He might return them to the seller and rescind the contract, or he might accept the bags, and thereby affirm the contract, and recover of the seller damages for breach of warranty, or recoup the same in an action for the purchase price. Stillwell, Bierce & Smith Vaile Co. v. Biloxi Canning Co., 78 Miss. 779, 29 So. 513; J. B. Colt Co. v. Odom, 136 Miss. 651, 101 So. 853; Alig v. Lackey, 114 Miss. 392, 75 So. 139; Annotation 35 L. R. A., N. S., p. 501, 506, and cases cited; Noble v. Olympia Brewing Co., 64 Wash. 461, 117 P. 241, 36 L. R. A., N. S., 467.

██ ██ We do not think that the appellee waived its right to assert its claim for damages by accepting the bags and using them after discovering the alleged defects. In 46 Am. Jur. p. 442, Sales, Sec. 258, the rule is stated as follows: "By the weight of authority, even where the buyer of goods by executory contract has sufficient opportunity to inspect the goods, or he does inspect the same and ascertains defects therein, rendering them unmerchantable, he may, nevertheless, accept the goods and rely upon a breach of the implied promise or warranty of merchantability as an offset to or counterclaim against the amount due for the purchase price. Acceptance of goods with knowledge of defects making goods unmerchantable is not as a matter of law an acceptance in full satisfaction or waiver of the seller's promise or warranty that the goods are merchantable."

The appellant's attorneys, however, argue that, under the rule laid down in the case of Lancaster v. Jordan Auto Co., 185 Miss. 530, 187 So. 535, recoupment should not have been allowed in this case for the reason that the defendant's claim for damages arose out of a different transaction from that mentioned in the plaintiff's declaration. But that argument is untenable for the reason that the bags delivered in February 1949 and the bags delivered in December 1949 were all delivered under the Sales Contract dated August 13, 1948, which provided for total deliveries of 50,000 bags, and the rule laid down in Lancaster v. Jordan Auto Co., supra, has no application to the facts presented in this case.

The judgment of the lower court must be reversed, however, for the reason that the damages sought to be recouped were not proved with such reasonable certainty as to enable the jury to make an intelligent finding as to the amount of the damages, and for the reason that the damages were for the most part caused by the defendant's own negligence in using the defective bags with full knowledge of the defects.

In 46 Am. Jur., p. 865, Sales, Sec. 738, it is said that, "In an action for damages for alleged breach of contract where the alleged breach consists in the delivery of an article not complying with the contract, such as an article of inferior quality, the damages are ordinarily the difference between the value of the article delivered and what it would have been worth if it had complied with the contract." There are exceptional cases in which special damages may be recovered in addition to the general damages. But such special damages are not recoverable unless they are the direct, natural and proximate result of the breach of warranty. And the law is well settled that a person seeking to recover damages caused by the breach of implied warranty of merchandise purchased cannot recover damages which are proximately caused by his own negligence in using the defective articles. Sutherland on Damages, 4th Ed., Vol. 1, p. 317.

██ ██ A person seeking to recover damages caused by the purchase of defective articles to be used by him can only recover such damages as he could not have avoided by the exercise of reasonable diligence; and he is required to make reasonable effort to protect himself from loss.

In Sutherland on Damages, 4th Ed., Vol. 1, p. 317, Sec. 89, it is said that, "where property is sold with a warranty. of fitness for a particular purpose, if it be of such a nature that its defects can be readily, and in fact are, ascertained, yet the purchaser persists in using it, whereby losses and expenses are incurred, they come of his own wrong and he cannot recover damages for them as consequences of the breach of warranty."

If the buyer's own fault or negligence contributed to the injury, as by using the goods with knowledge of their defects, he cannot recover consequential damages, since such damages were under the circumstances not proximately due to the breach of warranty. Williston on Sales, Rev. Ed., Vol. 3, p. 379, Sec. 614b., and cases cited.

A case in point is Hitchcock v. Hunt, 28 Conn. 343, where barrels sold with pork were warranted not to leak, and the purchaser, after having ascertained that the barrels were so defective that the pork could not be preserved in them, suffered the pork to remain in them without any effort to procure others in their stead, as he might have done, and it was spoilt from that cause; and it was held that the loss should be attributed to the carelessness of the purchaser, and that he could sustain no claim against the seller on the warranty for the value of the pork lost by reason of the defects in the barrels, and that his damages were limited to the expense which the evidence showed he would have had to incur in repacking the pork.

In the case of Vicksburg & Meridian R. R. Co. v. Ragsdale, 46 Miss. 458, this Court held that the party subject to injury from a breach of contract is under obligation to make reasonable exertion to reduce his damages as much as practicable; and if through negligence or will-

fulness he allows the damages to be unnecessarily enhanced, the increased loss should justly fall on him.

(Hn 9) The appellee admitted that the bags received in December 1949 were entirely satisfactory, and that only $2,000 had been paid on the purchase price of $4,902.31. The appellee sought to recoup damages on account of the defects in the bags received during the preceding February in an amount equal to the unpaid balance of the purchase price of the bags received in December. The burden of proof as to the damages claimed rested upon the appellee. The appellee was entitled to recoup only such damages as were the natural and proximate result of the appellant's failure to deliver bags of the quality contracted for. The appellee, as stated above, was not entitled to recoup damages that were the natural and proximate result of its own negligence, and the negligence of its officers and employees, in using the defective bags after they had discovered that the bags were defective. And the appellee was under a duty to take reasonable steps to prevent loss on account of the defective condition of the bags, after the defects had been discovered.

The defects testified to by Edgington and his foreman were patent defects. The holes were one-half inch to two and one-half inches in length. There is no proof in the record to show how many of the bags were unfit for use. Most of the bags were apparently in usable condition. Edgington testified that the appellee used them. Some of the bags were repaired, but there is no proof to show the number of bags that were repaired or the cost of making the repairs. The damages which the appellee sought to recoup were in the main damages alleged to have been sustained on account of the loss of good will, prestige and reputation. Such damages could not be recovered under the facts disclosed by the record in this case.

The appellee offered no clear proof to show the difference between the value of the bags received and the value

which they would have had if they had been free from defects. Edgington was asked the question, "Were all the bags serviceable to any extent?" And in answer to that question he said: "Well, we used them * * * We used them to ship seed in. * * * We used every one we could." Edgington testified as to complaints of customers, who were dissatisfied with seed shipped to them in defective bags. He testified that he had refunded to one customer the sum of $900 on account of seed which had been returned because of the defective condition of the bags. But there is no proof in the record as to the actual loss which the appellee sustained on account of the seed thus returned. He testified that he had 94,000 pounds of seed returned by other customers, and he estimated that half of these were returned because of the defective condition of the bags. There is nothing in this testimony, however, to indicate the loss sustained on account of the shipments referred to.

In the case of S. H. Kress & Co. v. Sharp, 156 Miss. 693, 126 So. 650, 68 A. L. R. 167, this Court held that the damages recovered in any case must be shown with reasonable certainty, both as to their nature and in respect to cause from which they proceed. In the case of Ammons v. Wilson & Co., 176 Miss. 645, 170 So. 227, 229, which was a suit brought by the appellant against the appellee to recover damages claimed by the appellant and alleged to have been caused by the appellee's breach of contract to ship the appellant 942 cases of shortening, the Court held that, "If there were actual damages, it devolves on appellant to trace them directly to the breach of the contract and make them definite enough to comply with the governing rules of law."

In a case of this kind, the purchaser who seeks to recoup damages alleged to have been sustained as the result of a breach of warranty of quality of the articles purchased, must not only show with fair and reasonable certainty that the damages sought to be recouped are the direct, natural and proximate result of the breach of warranty,

but the purchaser must also prove his damages with reasonable certainty.

 The Court granted the following instruction to the defendant, which the appellant vigorously criticizes on several grounds: "The Court instructs the jury for the defendant that if you believe from the preponderance of the evidence in this case that 19,000 of the bags received by the defendant from the plaintiff under a contract for same were defective and not suitable for the purpose made and purchased, and that the defendant has sustained losses or damages as a result of the defective condition of said bags shipped it by the plaintiff, and that such damages, if any, equals the amount of the indebtedness sued for, then it will be your duty to return a verdict for the defendant."

The above mentioned instruction was erroneous in that it did not limit the damages which the defendant might recover to the damages which were the direct, natural and proximate result of the breach of the implied warranty of quality of the bags; and in that it did not take into account the negligence of the defendant in using the bags after the defendant had discovered that the bags were defective. The instruction was erroneous for the additional reason that it furnished the jury no guide for the assessment of the damages which the defendant might have been entitled to recoup; and the proof of the alleged damages was so indefinite and uncertain that the jury could not have made an intelligent finding upon the issue presented if the instruction itself had been free from error.

 The appellant in his brief also complains of the refusal of the Court to grant certain instructions requested by the appellant, which the court refused to grant. We do not think that it is necessary to discuss these instructions in detail, for the reason that most of these instructions were predicated upon the theory that the appellee was required to rescind the contract and return the merchandise to the appellant, and had failed

to do so. For the reasons already stated, the appellee was not required to rescind the contract and return the merchandise to the appellant, and the instructions requested by the appellant were properly refused by the Court.

For the errors pointed out above the judgment of the lower court is reversed and the cause remanded for a new trial.

Reversed and remanded.

**Roberds, P. J.** and **Alexander, Holmes** and **Ethridge, JJ.**, concur.