## GALLOWAY *v.* BROWN, et al.

No. 40422 March 11, 1957 93 So. 2d 459

474

*H. T. Huber, Jack M. Greaves,* Canton; *Watkins & Eager,* Jackson, for appellant.

*G. B. Herring,* Canton, for appellees.

478

McGehee, C. J.

On the 3rd day of March, 1955, the appellant, C. H. Galloway, Sr., filed in the Circuit Court of Madison County an affidavit in replevin to obtain the immediate possession of 9 head of cattle, separately valued but of the total value of $422.50, which cattle he alleged were

being wrongfully detained by the appellees Floyd T. Brown and J. Leland Brown. Pursuant to the said affidavit a writ of replevin was issued and placed in the hands of the deputy sheriff for execution.

The cattle of the appellant were trespassing upon the lands of the appellees and it is stipulated in the record herein that the adjoining lands of the appellant and those of the appellees are within the area where the state-wide stock law is in full force and effect, as provided for under Section 4864, Code of 1942.

The deputy sheriff was accompanied on the lands of the appellees by the appellant, his son, and some Negro helpers for the purpose of assisting the deputy in the execution of the writ of replevin, and whereunto they had been duly deputized on account of the fact that Mr. Galloway's cattle were wild to the extent of being difficult to corral and take into possession while grazing in the pasture of the appellees along with about 175 to 200 head of their cattle.

During the day when the writ was being executed there were a total of 23 head of cattle belonging to Mr. Galloway trespassing on the pasture land and oat crop of the appellees. These 23 head of cattle were corralled into an enclosure with some of the cattle of the appellees, but only the 9 head described in the affidavit and writ of replevin on March 3, 1955, were delivered into the possession of the plaintiff in replevin upon his execution of a bond therefor on the date this writ was served, the appellees being unwilling for the possession of the other 14 head to be delivered to the plaintiff without another writ of replevin for them. Consequently on the next day, March 4, 1955, another replevin suit was instituted in the Circuit Court of Madison County for the recovery of the immediate possession of the additional 14 head of cattle found in the pasture and oat crop of the appellees. In the additional writ of replevin

the cattle were separately valued and alleged to be of the total value of $635.50.

The suit for the 9 head of cattle seized on March 3, 1955, is styled as case No. 9972, and the suit for the remaining 14 head of cattle which were seized on March 4 or 5, 1955, is styled as case No. 9973 on the docket of the Circuit Court of Madison County. By agreement of the parties the two suits were consolidated and tried as one. As a result of the trial the jury fixed the separate value of each head of the cattle in the first group of 9 the same as the value fixed in the affidavit, writ of replevin, and in the sheriff's return, and of the total value of $422.50, and likewise fixed the value of each of the 14 head in the second group, and as being of the total value of $635.50.

The judgment then ordered that the plainitff C. H. Galloway, Sr, as principal, and J. E. Rorer and Eugene Wiggins, sureties, on the bond in Case No. 9972, restore the cattle described in that case to the defendants Floyd T. Brown and J. Leland Brown, or pay them the value thereof, to-wit $422.50, "as assessed by the verdict of the jury, the same amount being the value, as assessed by the jury of defendants' interest in said cattle under their lien for damages", and the judgment further ordered that the plaintiff C. H. Galloway, Sr., and W. T. Kernop and Mrs. H. G. Hawkins, sureties on his bond, restore the 14 head of cattle listed and described in Case No. 9973 to the defendants Floyd T. Brown and J. Leland Brown or pay them the value thereof in the sum of $635.50, "as assessed by the verdict of the jury, the same amount being the value, as assessed by the jury, of the defendants' interest in said cattle under their lien for damages". The judgment then ordered that "the plaintiff C. H. Galloway, Sr., pay to the said defendants Floyd T. Brown and J. Leland Brown the additional sum of $436.18, the total amount of this judgment being $1,494.18, being the damages assessed by the

jury; * * *". Neither the instructions to the jury nor the judgment entered limited appellees' recovery to the amount of their "lien" against the cattle for the amount of any such damages. The verdict of the jury makes no mention of the additional sum of $436.18 and this amount can be arrived at only by subtracting the total value of all of the cattle, as fixed by the jury, from the sum of $1,494.18, the total amount of the verdict.

Section 4864, Code of 1942, provides in effect that where the state-wide stock law governs, any person owning or having under control any livestock shall not permit them to run at large upon the *open* or *unfenced* lands of another person. (Italics ours).

 Thus it will be seen that all of the testimony in regard to whether or not the fence of the defendants was in a good state of repair was immaterial on the issue of whether or not they held a lien on the cattle of the plaintiff for such damages as they may have sustained by reason of the trespassing of the plaintiff's cattle on their pasture and crops. Where the state-wide stock law is in full force and effect, the owner of livestock is required to keep them under a safe enclosure of his own, without regard to whether or not other landowners in the stock law district have a sufficient fence, or any fence at all, around their crops of cotton, corn, oats or other such pasture crops; he must rely on the strength of his own fence and not depend upon the insufficiency of his neighbor's fence.

Section 4870, Code of 1942, provides, among other things, that any livestock as referred to in Section 4864, supra, "found running at large upon the lands of any other person than the owner or custodian of such stock may be taken up by any sheriff, constable, marshal, or other peace officer of the state within his territorial jurisdiction, and confined within a safe enclosure. * * * And the charges for so taking up and confining, together with any damage done by said stock, if any, shall be a special,

first and paramount lien upon said livestock, and unless same are paid by the owner, or person having such livestock under his control, when so notified, such livestock shall be sold as estrays, and the cost of taking up and confining, and damages, if any, together with other costs and expenses, shall first be deducted, and the balance, if any, shall be paid to the owner or person having such livestock under his control, * * *.''

Section 4871, Code of 1942, provides: ''Every owner of such livestock shall be liable for damages for all injuries and trespasses committed by such animals by breaking and entering into or upon the lands, grounds, or premises of another person; and the person injured shall have a lien upon the animal, or animals, trespassing for all such damage. The damages for such trespass shall not be less than 50 cents for each horse, cow or hog, and 25 cents for each of the other kinds of stock; and for every succeeding offense, after the owner has been notified of the first trespass or injury, double damages shall be recovered with costs. For breaking or entering into a pasture or waste ground, however, double damages shall not be recoverable, and the damages in such cases may be assessed as low as 40 cents for each horse, cow or hog and 20 cents for each of the other kinds of live stock.''

Section 4872, Code of 1942, provides that ''Any such livestock may be taken up and confined by any person upon whose land such animal, or animals, may have entered or may be found, such person not having consented for the animal, or animals, to run at large on such land, and when so taken up shall be dealt with as estrays. For taking up any animal the person so taking the animal up shall be allowed 50 cents per head for each animal so taken up, but in no case shall he be entitled to receive more than two and one-half dollars ($2.50) for stock taken up at any one time. He may also receive

reasonable compensation for feeding and caring for such animals while keeping them."

Section 4873, Code of 1942, provides in part as follows: "The person taking up an animal trespassing, after two days may begin his action to recover damages and charges and to enforce his lien, by filing a bill of particulars of his damages, together with a description of the animal on which the lien is claimed, with a justice of the peace, if his claim do not exceed two hundred dollars; * * *."

Section 4875, Code of 1942, provides for the institution of the proceeding in the circuit court if the amount claimed for damages by animals trespassing exceeds $200.00.

The defendants, upon whose lands the cattle were trespassing, did not follow any of the procedure outlined in the foregoing statutes. The proof discloses that although they claim to have verbally notified the plaintiff a number of times that his cattle were on their lands, they permitted them to so remain for two or three months immediately prior to institution of these two replevin suits by the plaintiff, and after they had admittedly made it known to the plaintiff that they did not want him, his son, or his employees to come on their lands for any purpose, because of the fact that the cattle were difficult to corral without damage to the pasture, fences and crops of the defendants, and without the necessity of disturbing the defendants' own cattle in the process of repossessing the cattle of the plaintiff.

And Section 4876, Code of 1942, provides that the owner of the animal, or person entitled to the custody, may, after suit is brought and before final judgment, replevy the animal by giving bond with sufficient sureties. And Section 4877 provides the manner in which such animals may be estrayed.

■■■ The proof upon the trial of the replevin suits is undisputed to the effect that the plaintiff's cattle were

difficult to corral from among the 175 to 200 head of the defendants' cattle which were in the same pasture or oat crop, and according to the proof offered by the plaintiff it was necessary for the plaintiff to lasso several or all of them before putting them in the truck to be hauled away to his own land. The deputy sheriff was entitled to employ all reasonable means in executing the writs of replevin and to deputize such help as he deemed necessary in order to take the plaintiff's 23 head of cattle into possession. He saw fit to deputize the plaintiff, his son, and two or three colored men who lived on the lands of the plaintiff to assist him in the execution of the writ. His return on the writ shows that the deputy executed the writ, with the help that he deputized; and the proof shows that he could not have done so alone. This was done over the protest of the defendants, and contrary to their suggestion that he get other help. In fact the defendants required the deputy to sign a statement in writing that he had deputized the plaintiff, his son, and these other helpers to assist him, and that the defendants did not want any of them on their land.

We think that it was within the judgment and discretion of the deputy to determine whether or not a helper, trained in lassoing these cattle, and whether the owner and his helpers could the better identify them among the large herd of the defendants, and be of greater assistance to him in the execution of the writ than other and disinterested parties would have been. In other words, we do not think that there was any wrongful abuse of process involved, but that the plaintiff was liable to the defendants for such damages as they could prove with any reasonable degree of certainty as resulting to the fences, pasture or oat crop by reason of the running of these cattle and disturbing those of the defendants in the process employed for the execution of the writ.

The court instructed the jury "to find for the defendants Floyd T. Brown and J. Leland Brown, and to

award to said defendants such actual damages to crops, fences and lands, as, from a preponderance of the evidence, they have sustained, and that if the jury believe from such evidence that former trespasses, known to plaintiff, had occurred the amount of actual damages awarded by you should be doubled."

The instruction ignores the fact that the plaintiff's testimony and that of some other witnesses disclosed that his cattle grazed upon only about 175 acres of the 350-acre oat crop where the defendants' said cattle and those of the other people were grazing as a pasture. The defendants were growing no cotton, corn, soy beans or other commercial crops for the market, other than the remaining 175 acres of oats which were fenced off from the other half of the oat crop and from which other one-half the defendants harvested 6,000 or 7,000 bushels of oat seed.

Under Section 4871, Code of 1942, it is provided, among other things, that: "For breaking or entering into a *pasture* or waste ground, however, *double* damage shall not be recoverable, and the damages in such cases may be assessed as low as 40 cents for each horse, cow or hog and 20 cents for each of the other kinds of livestock." (Italics ours) We therefore think that as to the 175 acres where there were from 175 to 200 head of the defendants' cattle, together with those of John Schultz and of the Negroes, grazing as a pasture where the 23 head of the plaintiff's cattle were trespassing there would be no liability for double damages against the plaintiff; and that therefore this instruction was misleading in that there was considerable testimony on behalf of the defendants seeking to show that the plaintiff's cattle were fed silage, cottonseed meal and salt along with the feeding of the cattle of the defendants' and of John Schultz and of some Negroes, and of substantial value. It was calculated to cause the jury to believe that they were entitled to allow the defendants

damages for the value of the silage, cottonseed meal, salt, and of the growing oats consumed as being for the "care and feeding of cattle", which was clearly eliminated as an item for double damages in Calcote, et al v. May, 207 Miss. 547, 42 So. 2d 742.

Moreover, if the plaintiff's cattle trespassed on only the 175 acres of the oat field, where the cattle of the defendants and others were grazing as a pasture, there would be no recoverable item of damages "for breaking or entering into a pasture" so far as double damages are concerned. We do not think that a strict construction of this highly penal statute would permit the assessment of double damages for breaking and entering into that portion of the oat field which was planted for and used only as a pasture, which the proof shows to have been about one-half of the 350-acre oat field, where the cattle of the defendants and of other persons were grazing every day. It is asserted in the brief on behalf of the appellees, defendants in the trial court, that the jury did not assess any double damages, but as to this we would not know, since we are unable to tell what items all of the $1,494.18 consisted of.

The court further instructed the jury that its verdict might be for the separate value of each cow involved, to be fixed by the jury, and in the total sum of $.........; and that the jury might further find for the defendants and fix their total damages at $.........

We think that it was proper for the court to authorize the jury to separately assess the value of each of the 23 head of cattle involved, and also their total value in order that the defendants would be protected as against the plaintiff and the sureties on his two replevin bonds for the collection of any actual damages that they may have sustained and proved on account of the cattle trespassing upon their lands, fences and crops, so that the cattle or their value may be forthcoming to satisfy any lien that they may have established by a

preponderance of the evidence against the plaintiff's cattle on the counter claim of the defendants filed under the authority of Section 1483.5, Vol. 2, Code of 1942. But the instructions obtained by the defendants present the question of whether or not the jury may have been misled by them into thinking that they were authorized to assess the plaintiff with the value of his own cattle in addition to, and as a part of, the allowance to the defendants of damages to their lands, fences and crops caused by the trespassing of the plaintiff's cattle thereon.

In the Calcote case, supra, he, as owner of the cattle, sued out a writ of replevin and gave bond for the forthcoming of the 12 head of cattle which had been trespassing on the lands of the appellee, and prior to the trial the owner disposed of the cattle. Judgment by default was suffered by Calcote and the issue of damages heard under a writ of inquiry, which is the normal procedure where a judgment by default is taken. In that case the landowner May set up by way of a cross demand for damages, the following items: "(1) Damages to oat crop $100; (2) to land $50; (3) taking up cattle $2.50; (4) care and feeding of cattle $48." The Court held that: "Section 4871 allows the owner of the invaded land double damages if the trespassing occurs, as it did here, 'after the owner (of the cattle) has been notified of the first trespass or injury'. Yet, the damages allowed thereunder are only those incurred 'for all injuries and trespasses committed by such animals by breaking and entering into or upon the lands, grounds, or premises of another'. Hence, the maximum allowable thereunder would be double the first two items of damage to crop and land, or a total of $300." In other words, the court eliminated the last item as to "care and feeding of cattle $48" as being not subject to the statute for the assessment of double damages. But the Court further said: "Since the cause is to be remanded for

hearing upon the damage issue, and since Calcote was not entitled to immediate possession of the cattle, except as subject to the lien of May, we do not decide whether notice (of the motion of Calcote's attorney to withdraw from the case) was required." In other words, the Court recognized the right of the owner of the livestock to the immediate possession thereof, "except as subject to the lien of May".

■■ We are therefore of the opinion that in the instant case the defendants were only entitled to have their lien established against the cattle for the amount of actual damages sustained by the defendants by reason of the trespassing of the plaintiff's cattle upon their lands, fences and crops, the amount of which they should prove with a reasonable degree of certaintiy by a preponderance of the evidence as the proximate result of the fault of the plaintiff. ■ ■ That the judgment should have been in the alternative that the plaintiff and his surety should either restore unto the defendants the 23 head of cattle or their value, for the collection of the counter claim of the defendants for such damages, unless the plaintiff should pay the amount of damages assessed against him by the jury. ■■The liability of the owner of livestock trespassing upon the lands of another in a stock-law district, for the actual damages caused by them is absolute, ■ ■ and the defendants were entitled to a peremptory instruction on liability for the amount of such damages as they might have proved by a preponderance of the evidence to a reasonable degree of certainty, but we are of the opinion that they were not entitled to a peremptory instruction that the cattle be restored to them, except on the condition that the plaintiff and the sureties on his replevin bonds should fail to pay to the defendants the damages so assessed. ■■ Since Section 4876, Code of 1942, provides that the owner of the animal, or person entitled to the custody, may, after suit is brought and before

final judgment, replevy the animal by giving bond with sufficient sureties, we think that the legislature by the enactment of this statute clearly recognized the right of the owner of cattle trespassing upon the lands of another in a stock-law district to gain the immediate possession thereof by the writ of replevin, subject to the lien of the defendant-landowners for the damages done by reason of such trespassing, and especially where the landowner fails for any reason to take any steps for the enforcement of his lien in the manner provided for by law. ▆▆ ▆▆ Unless the landowner under the facts here is entitled to the immediate possession of the cattle subject to such a lien, then it would have been a vain thing for the legislature to have conferred on the owner of the livestock the right to replevy them, since it is well settled that a writ of replevin will lie only in favor of one entitled to the immediate possession of the property involved.

▆▆ ▆▆ In a cross-assignment of error and in their brief the defendant-landowners argue that the trial court was in error in not submitting to the jury the issue of both actual and punitive damages against the admitted owner of the 23 head of cattled involved. In this connection it should be observed that the defendant-landowners in their answer to these replevin suits alleged that these cattle of the plaintiff were "wild, unruly, predisposed to break through and jump over any enclosure and can not be herded and driven as cattle are nomally herded ·and driven, but must be captured, if captured (at all), by running said animals down on horses with lassoes in the old western style; * * *". And that by reason of the foregoing facts the defendants were unable, without great damage to their own herd of cattle and at considerable expense, to impound the said animals. Moreover, the defendant-landowners so testified at the trial, and they admitted that they had told the plaintiff that they did not want him or his help-

ers to come on their land. We think that the plaintiff had a right, therefore, to resort to the remedy of suits in replevin; that being liable for any damages caused by his cattle to the land, fences and crops of the defendant-landowners, the plaintiff was entitled to reduce such damages by repossessing the cattle and precluding them from further trespassing on the lands of the defendants.

The defendant-landowners denied that they had the plaintiff's cattle in their possession or under their control, notwithstanding the fact that they were wrongfully detaining them when admittedly forbidding the plaintiff to come and get them. The defendant J. Leland Brown testified that on December 7, 1954, he took the plaintiff through the defendants' herd of cattle and pointed out to the plaintiff his own cattle, and yet he admitted that the plaintiff told him on that day ''that he was coming down there for those cattle'', and that he, the witness, told the plaintiff that he did not want his own herd of cattle disturbed. He elsewhere admitted in his testimony, and had alleged in his answer, that there was no way for the plaintiff's cattle to be repossessed without disturbing the herd of the defendants.

On the measure of damages the said defendant testified that ''some of these cattle were in there all winter, some of them were in there a couple of months, some of them were in there a month, and some of them had been in there the previous winter.''

In the case of Masonite Corp v. Steede, 198 Miss. 530, 23 So. 2d 756, the Court, in reversing a judgment for the plaintiff and rendering judgment for the defendant recognized that damages must be shown with reasonable certainty, but that the jury is not required to determine accurately what defendant's proportionate part of the damage was, but only that defendant's part was not less than a certain percentage thereof, and then apportion the damage accordingly. In that case others

acting independently of the defendant had contributed to the pollution of a river, which allegedly ruined plaintiff's fishing resort business. In the instant case, it is admitted that from 175 to 200 head of cattle of the defendants were grazing on the portion of the oat crop which was being used as a pasture and that some cattle of John Schultz and of some Negroes were likewise grazing thereon, and we are of the opinion that the verdict of the jury for the full value of all of the plaintiff's cattle and the additional sum of $436.18 is against the overwhelming weight of the evidence as to the damages that may have been caused by the plaintiff's cattle to the land, fences and crops of the defendants and that the instructions were misleading and confusing as a guide for the jury in arriving at its verdict; and that therefore this cause should be reversed and remanded for a new trial. The motion of the plaintiff for a new trial should have been sustained as the jury was furnished no guide for the assessment of the damages which the defendants may have been entitled to receive. Compare last paragraph of Headnote 10 in the case of Mo. Bag Co. v. Chem. Delinting Co., 214 Miss. 13, 58 So. 2d 71.

■ ■ Insufficient facts were given to the jury by the witnesses upon which the full amount of this verdict could have been based with any reasonable degree of certainty, and the only instruction obtained by the plaintiff was that before the defendants can recover damages for the alleged damages set out in their claim, they must prove said damages by a preponderance of the evidence. In other words, no error contained in the defendants' instructions was cured by any instruction granted for the plaintiff. Moreover, the jury in considering the amount of damages that may have been sustained on account of the trespassing of the plaintiff's cattle on their land, fences and crops or pasture should have considered the question of whether or not the trespassing of the cattle

was prolonged for two or three months by reason of the fact that the defendants admittedly forbade the plaintiff going on their lands to repossess his cattle. Assuming as true the allegation of the defendants in their answer, and as testified to by them, that the cattle could not have been repossessed without being lassoed and disturbing the defendants' cattle, this could have been done much earlier than March 4 and 5, 1955, had the defendants not forbidden the plaintiff or any of his helpers to come on their land. From the date of the execution of the writs of replevin in March 1955 to the June 1956 Term of the circuit court the record discloses that there had been no further trespassing by these cattle. Before a great amount of the damage was allegedly done, the plaintiff had admittedly offered to come and get the cattle on December 7, 1954, and was forbidden to do so by the defendants.

 It was the duty of the defendant landowners to use all reasonable efforts to reduce the damage to their land, fences, pasture or crops, for the liability of which they intended to subject the plaintiff on a cross-claim against him for damages. Moreover, the plaintiff, whose liability for the damages would be absolute to the extent that they were proved to any reasonable degree of certainty, was entitled to shorten the period of the trespass of his cattle by removing them from the lands of the defendants. If it be true, as testified to by the plaintiff, that he, his son, and other helpers were forbidden to come on the lands of the defendants to repossess the cattle, and there is no substantial dispute in the testimony on that issue, then the defendants would not be entitled to any damage caused after the plaintiff offered to remove his cattle from the lands of the defendants and was prevented by them from doing so, or refrained from doing so because of the strenuous objection of the defendants.

Assuming that the defendant J. Leland Brown had reason to be provoked at the plaintiff because of what the plaintiff said to him when Brown was interfering with the plaintiff's effort to repossess his cattle on a former occasion, this fact would not have justified his claim of damages for the trespass of the cattle over a period of two or three months, since the said Brown repeatedly testified that he had objected to plaintiff, his son, and their helpers coming on the lands of the defendants and removing his cattle from said lands and putting an end to their trespassing. In other words, the defendants are not entitled to any damages caused by the trespassing of the plaintiff's cattle while the defendants were objecting to the plaintiff's removing the cattle from their lands in the only manner, admittedly, that they could have been repossessed and removed.

We are of the opinion that the cause should be reversed and remanded for a new trial in accordance with the foregoing views as to the rights of the respective parties.

Reversed and remanded.

*Hall, Lee, Kyle* and *Holmes*, JJ., concur.