EUBANKS *v.* W. H. HODGES & COMPANY

No. 43721 December 13, 1965 180 So. 2d 922

*Jesse W. Shanks,* Purvis; *Robert L. Calhoun,* Hattiesburg, for appellant.

*Wm. E. Andrews, Jr.,* Purvis; *Stone D. Barefield,* Hattiesburg, for appellee.

Lee, C. J.

The bill of complaint in this cause was filed October 17, 1963 by W. H. Hodges & Company, a Louisiana corporation, and its substituted trustee, William E. Andrews, Jr., in the Chancery Court of Lamar County against P. T. Eubanks.

The grounds therefor were substantially that Eubanks, on July 11, 1962, for a valuable consideration, executed the promissory note and chattel deed of trust to the trustee therein named for the use and benefit of W. H. Hodges & Company to secure an indebtedness of $8,-328.24, as evidenced by certified copies of the instruments. One hundred and ninety-three head of cattle, as described in the deed of trust, were conveyed to the trustee, subject to a prior deed of trust in favor of another mortgagee. Payment thereof was due April 1, 1963. William E. Andrews was substituted in the place of the original trustee. Default was made in the payment of the indebtedness. The property was of such character

and class that it could not be specifically described so as to enable the trustee to replevy it. In addition, if the property was no longer in existence, or beyond the jurisdiction of the court, then the complainant was entitled to recover a money judgment for the amount of the note, interest thereon at the rate of 8% per annum, and attorney's fees in the amount of 10% of the indebtedness. There was a prayer for the establishment of a lien, the possession of the property, and the award of a judgment, interest, and attorney's fees in the amount demanded.

The answer of the defendant, in effect, denied that the note and deed of trust represented a valid indebtedness. It alleged that the property had been sold and disposed of; that the deed of trust was void and unenforceable; and that the complainants were entitled to no relief whatever. The defendant made his answer a cross bill and charged in effect that W. H. Hodges & Company, during 1959, furnished him a number of black angus cattle under a plan for reimbursement to the corporation to be effected through the increase of calves; that, when the first crop of 1960 calves began to show, it appeared that the cattle, so sent him, were contaminated with liver flukes and Bang's disease; that in early 1961, he had the cows tested, and, at that time, a number of cows, brought to the farm by W. H. Hodges & Company, were reactors, and it was necessary to sell them at a loss; and that this infection spread, and finally, during 1962-63, it was necessary to dispose of the entire herd at great loss. He further charged that this loss was occasioned on account of the wilful and false representation of the complainant regarding the condition of the animals at the time of delivery to the farm. The prayer was for dismissal of the original bill, the award to him of actual damages in the sum of $23,620, less any credits that might be due as set-off, and punitive damages in the sum of $25,000.

To the allegations of the cross bill, the complainants moved that the same be stricken and dismissed because, in effect, (1) the basis of the counterclaim related to transactions that occurred during 1959 and prior to July 11, 1962, and that the claim, involved in this cause, originated after any right, claim or defense that the defendant could have asserted and was therefore waived; and (2) the defendant, by his pleading, alleged and admitted that he discovered the alleged disease in the cattle early in the year 1961, but that thereafter on July 11, 1962 he executed the note and deed of trust, and this constituted a waiver of any defense which he might assert on the ground of fraud or lack of consideration of the note and deed of trust.

The decree, entered thereon, recited that "after hearing oral evidence, documentary testimony, and argument by counsel" for both parties "the counterclaim is denied, and the defendant is granted until March 16, 1964 to file his answer."

Defendant's amended answer contained substantially the same affirmative defense set out in the original answer and cross bill, and also averred that he had been charged in excess of 8% interest, thus subjecting the complainant to a forfeiture of all interest, and, besides, that he had not received full credits for all payments made by him.

P. T. Eubanks, called as an adverse witness, admitted that he signed the note in question dated July 11, 1962, and also the deed of trust of the same date. He stated that he did not, at that time, own a cow and has not had one since this trouble with Bang's disease in 1963. The cattle are no longer in existence. He has made no payment on the July 11, 1962 note, and he made no claim of any payment since the suit was brought.

Ray Hodges, secretary-treasurer-general manager of W. H. Hodges & Company, offered in evidence the original note by Eubanks to W. H. Hodges & Company

of date of August 31, 1959 in the sum of $7,783.64. He explained that New Orleans Auto Buyers, Inc., had bought some cows for Eubanks, and that complainant paid that firm the amount stated in the note. In other words, the purchase of the cattle had been financed by the complainant and the cost of such cattle was the consideration for the note, which was the only evidence it had of the indebtedness. This note was renewed a number of times, as shown by the records which were offered by the witness. Finally, on July 11, 1962 Eubanks had his attorney to prepare the note, dated July 11, 1962, together with the accompanying deed of trust, executed the same, and mailed them to the complainant in New Orleans. The cattle were also named and described on the back of the ledger card of the July 11, 1962 note.

When the complainants rested, the defendant proposed to offer and prove by Dr. Whitfield that when the cattle were first tested, 28 cows were infected and the herd was quarantined. In the early part of 1963, the herd was again tested and 48 were found to be infected and could not be sold in interstate commerce. For that reason, their delivery to Eubanks by W. H. Hodges & Company constituted a fraud. There was the offer also to show by the defendant, evidence of the same factual situation.

The complainants objected to those offers because the defendant, by his own pleading, alleged and showed that he had knowledge of the existence of the alleged disease in the herd as early as 1960, two years prior to the execution of the note and deed of trust, and such defense, as might be claimed therefrom, had therefore been waived. This objection, on the part of the complainants, was sustained.

At the close of the evidence, while the chancellor made no separate finding of fact, the final decree particularized the finding, and pointed out clearly his idea on the issues before the court. In effect, he found that W. H.

Hodges & Company, a corporation, is the holder of a valid, legal, and outstanding promissory note, dated July 11, 1962, bearing interest from September 1, 1962, subject to a setoff of $401.91 as an overcharge of principal, together with credits of $1,752.33 and an offset of $276.02 on account of a finance charge, which he held was not proper for it to receive. The court fixed the attorney's fee at $500. In other words, there was a decree for $7,650.31 together with interest thereon at 8% from September 1, 1962 and an attorney's fee of $500, aggregating a total of $8,150.31.

From the decree entered, Eubanks appealed.

Appellant contends it was error to dismiss his cross bill because the appellee was obligated to provide healthy and disease free cattle.

Throughout the record, it appeared that W. H. Hodges & Company paid for the appellant the cost of the cattle which were obtained by the appellant from New Orleans Auto Buyers, Inc. Appellee was not the seller — it paid for the appellant's purchase. The cost of the cattle was the consideration for the original note. That note was renewed a number of times, being finally consummated by the renewal of July 11, 1962 and the execution of the accompanying chattel deed of trust.

The pleading of the appellant showed that he had discovered the existence of the alleged disease in the herd with the birth of the first calves from the 1960 crop. Besides, his knowledge of this condition of the herd continued to extend and widen. Yet, during the interval, he renewed the original note numerous times. Finally, he caused his attorney to prepare the note and chattel deed of trust of July 11, 1962, executed the same, and mailed them to the appellee in New Orleans, Louisiana, at a time when he was fully apprised of any right or defense that he might have had thereto.

The case of Pintard v. Martin, S. & M. Ch. 126, 134 (1843), laid down and applied the following rule:

"The authorities fully establish the position, that if a party, having knowledge that he has been defrauded, proceeds to do acts in confirmation of his agreement, by voluntarily entering into a new engagement concerning it, he will be held thereby, to have waived the fraud, and to have renounced that relief, which he might otherwise have had in equity," citing authorities.

In the case of McArthur v. Fillingame, 184 Miss. 869, 875, 186 So. 828, 829, (1939), Fillingame had purchased the car in question on August 31, 1935 and executed a conditional sales contract. He subsequently renewed the contract on December 11, 1935 and July 31, 1936. When the car was finally repossessed and sold in May 1938, and appellant sued for a deficiency judgment, Fillingame pleaded payment and false representation at the time of the original sale. In rejecting that defense, the opinion said:

"It is not necessary to examine, with any particularity, into the facts respecting the alleged representations at the time of the original sale, for the reason that between that time and the date of the last renewal, appellee had acquired full knowledge of all the facts which had any relation to the misrepresentations that he now charges against appellants; *and the rule is that a renewal of the contract after such knowledge is a waiver of the defense which, on the ground of misrepresentation or the like, might have been made to the original contract. By the renewal, the original contract is superseded and the new contract becomes the subsisting obligation between the parties,"* citing authorities. (Emphasis supplied).

See also Tallahatchie Home Bank v. Aldridge, 169 Miss. 597, 604, 153 So. 818, 820 (1934), where it was said:

"Where a party has full knowledge of all defenses to a note, and executes a new note payable at a future

date, he then waives all his defenses and becomes obligated to pay the new note,'' citing many cases.

Manifestly the court was correct in dismissing the cross bill in this case because it did not state a justiciable controversy.

Since this litigation is governed by the principles set out in the above mentioned and cited cases, it follows that Morrow v. Barron Motor Co., 229 Miss. 51, 90 So. 2d 20 (1956), and Missouri Bag Co. v. Chemical Delinting Co., 214 Miss. 13, 58 So. 2d 71 (1952), cited by the appellant, have no application here.

The appellant also contends that the court erred in sustaining an objection by the complainants to the testimony of Eubanks on direct examination, after having been called as an adverse witness by the complainants.

To begin with, this assignment is not supported by the record. According to the record when Eubanks, after having been cross examined as an adverse witness, was taken by his counsel for direct examination, his counsel told him to go ahead and tell the court about the circumstances under which the note and deed of trust were given. The following ensued:

"This deal started out on an agreement that Mr. Hodges would furnish me cattle . . . .

BY MR. BAREFIELD:

Now, we object to any agreement, or any testimony as to any transaction prior to . . .

BY THE COURT:

Gentlemen, let's go off the record a moment.

HERE ARGUMENT IS OFF THE RECORD

WITNESS EXCUSED.''

There is no showing that the court sustained this objection or refused to let the witness testify. Actually the record indicates that counsel voluntarily withdrew the witness. No error appears in that respect.

 ██ Besides, the appellant contends that the court erred in not finding that appellee had charged usurious interest in excess of 8% per annum.

A reading of the record discloses that Ray Hodges was cross examined in great detail by counsel for appellant; that the various renewals of the notes were brought to the attention of the court; and that the results of all charges and credits in great detail was ascertained by the court, commencing with the inception of the original indebtedness and extending throughout the life of the relationship. Furthermore, it showed that the chancellor was fully cognizant of all disclosures; that from time to time, he asked questions himself; and that he obtained agreements by the parties when such could be arrived at. It is obvious that the learned trial judge was clearly warranted in arriving at the result which he reached; and that the appellee, under the circumstances, would not have deserved a forfeiture of interest.

The assignment because of the court's refusal to permit the introduction of Dr. Whitfield and the appellant, after the appellee had closed his case, for the reasons stated, is without merit. That action was properly taken by the court under the Pintard, McArthur and Tallahatchie Home Bank cases, *supra.*

There is no just basis on which it can be said that the learned chancellor misapplied charges and credits, or that his decree is not sustained by substantial evidence.

Consequently, the decree appealed from is affirmed.

Affirmed.

*Gillespie, Jones, Inzer and Smith, JJ.,* concur.