SMITH, Justice:
This is an appeal by F.M.C. Corporation, d/b/a Oakes Manufacturing Company, and State Poultry Equipment, Inc. from a judgment of the Circuit Court of Newton. County in the sum of $10,000 recovered' against them by appellee, Howard Strebeck.
Strebeck, who had no previous experience, constructed a 500-foot chicken house in which he proposed to raise chickens. He consulted one Puckett, manager of State Poultry, a retailer of poultry raising equipment, as to the installation of an automatic chicken feeder. A four-line feeder was cheaper than two two-line feeders, but Puckett had never known one to be installed in so long a building and was doubtful that it had the necessary capacity to handle the contemplated length of chain and feed trough. He -telephoned a Mr. Piper, manager of F.M.C. Corporation, manufacturer of such equipment, and, after explaining the situation, was told that the manufacturer also entertained doubt on that score. However, F.M.C. agreed to supply the four-line feeder, if it were desired, to be sold to Strebeck by State Poultry, with the understanding that if it failed to do the work, two two-line feeders would be furnished to State Poultry for installation in exchange *76 for the four-line feeder, if requested by Strebeck.
Puckett informed Strebeck of this conversation, telling him that the manufacturer concurred in his own doubt as to the capacity of the four-line feeder, but that if, after trying the four-line feeder, it failed to work, State Poultry would, in exchange for the four-line feeder, install two two-line feeders to replace it, upon being requested by Stre-beck to do so. The manufacturer confirmed the telephone conversation in a letter addressed to Puckett, as manager of State Poultry, which Puckett showed to Strebeck prior to going forward with the installation. The letter stated:
Mr. Jess Puckett, Manager
State Poultry Equipment, Inc.
Highway #80
Forest, Mississippi
Subject: Specific Waiver Applying to # 2605
Dear Jess:
We understand that you propose to quote on a proposed sale to a Mr. Striebeck in the vicinity of Meridian. The proposed quotation involves approximately 2,000 feet of chain and trough (not over 2,100 feet) to be powered by a #2605 Drive Unit.
Now the purpose of this letter is to point out that our standard recommendation is for a maximum of not over 1,800 lineal feet of system to be served by the one horse power gearmotor of the #2605 Drive Unit. It is our considered opinion that if this load is to be uniformly distributed among the four lines (not over 10% variation in the length of lines), then the one horse power rated capacity of the gearmotor will be adequate. At least we are willing to warrant the adequacy of the power of the gearmotor for this particular quotation.
It is to be understood that in the event of failure of the gearmotor, the consequences to us shall be limited strictly to our offer to furnish two of the #2600-10 Dual Drive Units in place of the #2605 and to accept the return of the #2605. The exchange to be made without additional cost to you.
For your part, if the exchange is necessary, the labor and any materials incidental to connecting up the systems will be at your expense.
The above warranty is contingent only upon the horse power requirements for the proposed system. We do not waive any of the provisions of our standard zvarranty as it applies to the other components of the system. We do not know exactly what the layout will be like nor are we participating in the recommendations of the components and accessories.
Obviously, this special warranty would apply only to this particular quotation. When they have the benefits of the observation of the performance of the unit when so used, we can then give consideration to similar future opportunities. (Emphasis added)
Strebeck understood that the four-line feeder would be installed upon this basis, and it was so installed by State Poultry in April 1963. At that time Strebeck was supplied with the manufacturer’s manual containing detailed instructions for the operation of the feeder and also a statement of the manufacturer’s standard warranty, referred to in the letter. This warranty was as follows:
“Oakes warrants new equipment of its own manufacture for one (1) year from the date of shipment against defects in materials and workmanship. Liability for defective parts is limited to repair or replacement F.O.B. Tipton, Indiana. Oakes zvill not be liable for conseqziential damages. Material and equipment not manufactured by Oakes will be covered only by the manufacturer’s warranty. There are no other understandings, representations or warranties of any *77 kind, express, implied or statutory.” (Emphasis added)
After the equipment was installed by State Poultry four “batches” of chickens were raised by Strebeck in twelve months. It appears that in the chicken raising industry, five “batches” per year is considered a normal operation. Several breakdowns, characterized as minor, were promptly corrected by State Poultry. There appears to have been no trouble with the motor, which was not manufactured by F.M.C., until after the expiration of the •one-year warranty. Even then, when it was carried in by Strebeck to State Poultry, a replacement was furnished immediately, without charge, and the motor was repaired, also without cost to Stre-beck.
Strebeck sought damages in the present suit for alleged breach of warranty, in the sum of $12,400 which he itemized in his ■declaration as follows:
“$2,800.00 paid to defendant, State Poultry Equipment, Inc., for purchase of said four (4) line automatic feeder; the sum of $7,140.00 as lost grower pay to date; the sum of $1,699.00 as money spent for extra labor and repairs because of the faulty operation of said four (4) line automatic feeder.”
The declaration charged that Puckett, as agent for both defendants, had represented and warranted to Strebeck that if the four-line automatic feeder “would not operate and perform efficiently, then said defendants, upon request of plaintiff, would come back later and remove said four-line feeder and install two two-line automatic feeders.”
Strebeck claimed that the four-line feeder failed to operate satisfactorily; that some-time around the “last of January or the first of February” 1964, he made demand albeit in somewhat ambiguous terms, for -the replacement of the four-line feeder with two two-line feeders, and that, as a consequence of appellants’ failure to make the replacement, he had suffered the losses enumerated in the declaration.
On behalf of appellants, it is argued with great earnestness that there was no proof that Strebeck ever made demand upon them to remove-the four-line feeder and replace it with the two two-line feeders. The evidence supporting Strebeck’s contention that this demand was made is meager and not wholly satisfactory, and Strebeck was still using the equipment more than a year later, after, as he himself said, the warranty had expired. However, we are unable to say that it was not sufficient to warrant the jury in finding that the demand was made by Strebeck. Moreover, it is undisputed that the two two-line feeders were not installed although State Poultry had them in stock.
The case was tried and submitted to a jury upon the theory that Strebeck was entitled to recover consequential damages for breach of warranty. Appellants urge that the evidence as to these alleged damages was so uncertain, speculative, vague, and indefinite, as to be entirely incapable of supporting the verdict of the jury.
There appears to be considerable merit in this contention. But it is not necessary to reach this question as the case must be remanded for another trial upon the question of damages.
 Consequential damages are not recoverable under the circumstances of this case. A buyer may not accept and continue to use an article, which proves defective and which is not, or fails to perform, as warranted, and recover damages which he may sustain as a consequence of such continued use. Here the obligation of F. M. C. was limited to supplying State Poultry with two two-line feeders, to be exchanged for the four-line feeder upon request of Stre-beck. State Poultry’s obligation was limited to making the exchange. The measure of damages is the difference between the actual fair market value of the inadequate or defective four-line feeder and the rea *78 sonable cost of replacing it with two two-line feeders, at the time when, following the demand of Strebeck, it should have been so replaced by appellants. Missouri Bag Co. v. Chemical Delinting Co., 214 Miss. 13, 58 So.2d 71, 33 A.L.R.2d 501, 504 (1952).
Generally, the purchaser of an article warranted against defects or warranted to be suited for a specific use for which it is designed and sold, the article having proven defective or unsuited for such use, may recover of the seller, as damages for breach of warranty, the difference between the actual fair market value of the article purchased and what its fair market value would have been if it had not been defective, or had been capable of performing as warranted.
Here, the parties understood that the four-line feeder was installed upon a trial basis. The limitation upon F. M. C.’s obligation was specific, in writing, and made known to Strebeck prior to the installation. It was understood also that State Poultry’s agreement was to make the substitution of two two-line feeders when requested to do so by Strebeck. It is undisputed that State Poultry had in stock a supply of two-line feeders of F. M. C. manufacture, although it is argued that no two of them had been “earmarked” for Strebeck.
Strebeck had the right, upon discovering that the four-line feeder lacked the capacity to operate his feeder system, to call upon State Poultry to take out the four-line feeder and to install two two-line feeders. .The verdict of the jury must be considered as a finding that Strebeck made this demand, as he testified, about February 1, 1964. The burden then devolved upon Strebeck, when State Poultry failed to make the exchange, as requested, to buy and install the feeders himself. The machines were readily obtainable, and were in no sense unique or unavailable. Having installed the two two-line feeders, Strebeck would have been entitled to recover, as damages for breach of contract, the cost to him of the two feeders and of removing the four-line feeder and installing the two two-line feeders. Upon failing to do this, losses attendant upon his continued operation with a machine known to him to be inadequate or defective, or both, were consequences of his own negligence and are not recoverable against appellants.
The jury’s verdict as to liability is supported by substantial evidence, the weight and sufficiency of which were matters peculiarly within the. province of the jury, and the verdict as to liability will be affirmed.
However, the case is remanded for a new trial upon the question of damages alone, the measure of damages to be limited to the difference between the actual fair market value of the defective four-line feeder and the amount that it would have reasonably cost Strebeck, at the time appellants failed to comply with his demand, to replace the four-line feeder with two two-line feeders at their then fair market price.
There is testimony that the manufacturer sent to State Poultry two two-line feeders for use in making the replacement when, as, and if requested to do so by Strebeck. There is some effort to dispute this because, it was said, they were not “earmarked” for Strebeck. It is undisputed, however, that at all times State Poultry had replacements on hand and available for the purpose, if Strebeck requested them. We expressly pretermit any statement as to the rights of appellants as between themselves in the apportionment of any damages recovered by Strebeck.
Affirmed as to liability, and reversed and remanded for new trial upon the question of damages alone.
GILLESPIE, P. J., and PATTERSON, INZER and ROBERTSON, JJ., concur.