FOSTER *v.* COPIAH COUNTY CO-OPERATIVE, AAL., et al.

No. 42499          January 14, 1963          148 So. 2d 702

*Arrington* & *Arrington,* for appellant.

*Armstrong & Hoffman,* Hazlehurst; *Carter & Mitchell,* Jackson, for appellee.

McELROY, J.

This case was first tried in the Circuit Court of Copiah County, Mississippi, on November 29, 1960, and resulted in a mistrial. The case was tried for a second time on March 6, 1961, and resulted in a judgment for plaintiff in the sum of $3,600. The court then granted a new trial, setting aside the verdict of the jury and judgment of the circuit court, which action is complained of on this appeal. The case was tried on November 25, 1961, for the third time, and resulted in a judgment for the defendant. The appellant moved to set aside the judgment of the court entered at the third trial and to reinstate the former judgment and verdict of the second trial, which motion was overruled.

The appellant's contention is against the appellee's breach of his implied warranty to furnish chickens to the appellant suitable for the purpose for which they were intended, that is a flock of laying hens, and also on appellee's breach of his express warranty that the chickens delivered to appellant had been vaccinated against fowl pox. The appellee in its answer admitted that agents of the appellee had told the appellant that the chickens had been vaccinated against fowl pox.

The appellant contends, under this contract, that there was an express and implied warranty with the following provisions: "1. To provide the necessary facilities and personnel as recommended by the Federation to fulfill its obligations under the program. 2. To sell and deliver to the producer baby chicks, pullets, feed, medication, and other production supplies as required for the egg enterprise recommended by the Co-Operative to the producer, and to charge the same to the account of the producer at a reasonable market price; provided, however, that in no event shall the Co-Operative be obligated to make any other or further such advances when the aggregate of the amount so advanced to the producer

under the agreement equals or exceeds the sum of $4,200 or when the producer has failed or refused to perform any covenant or condition on his part herein contained." The co-operative agreement, section 14, states: "The Co-Operative is expressly authorized to exercise any and all rights or powers herein conferred upon it through the Federation and the right and power of the Federation when exercising any right or power hereby conferred upon the Co-Operative shall be identical to those herein conferred upon the Co-Operative the same as if the right and power has been expressly given to the Federation."

The declaration alleged: "That your plaintiff acting in accordance with said contract and relying upon said contract readied the necessary facilities to raise chicks to laying hens and for caring for the hens in production and purchased 2,000 chicks, eighteen weeks of age, from the defendant on or about the third day of March 1959, at a cost for said chicks of $3,600; that under the terms and conditions of the contract between the parties hereto the defendant had the duty to furnish chickens to the plaintiff suitable for the use for which they were intended; that is suitable to grow into producing, laying, hens, and also the duty to use the care and caution to vaccinate said chickens against diseases usually prevalent in chickens without vaccination in this area, particularly fowl pox; that the duly appointed and acting agent of the defendant assured your plaintiff that said chickens had been vaccinated at the time of the delivery. * * * Due to the extremely heavy mortality in said flock of chickens, the plaintiff's egg production never exceeded 1389 eggs per day and averaged 850 eggs per day from the beginning of production until the flock was disposed of, whereas your plaintiff's egg production would have averaged 1500 per day in the normal course of events if he had been furnished with properly vaccinated flock of chickens by the defendant."

The question before this Court is, did the circuit court err in overruling appellant's motion to set aside the verdict of the jury and judgment of the court in the third trial of this cause held on November 20, 1961, and in not re-instating the judgment of the court and verdict of the jury in the second trial of this cause held on March 6, 1961?

Appellant in his assignment of errors does not assert that there was any error whatever either on the part of the court or on part of the jury during the third trial of the cause — rather appellant's sole contention is that the lower court erred in granting appellee's motion for a new trial at the conclusion of the second trial of the cause, at which time the question of appellee's liability was submitted to the jury on two of the counts of plaintiff's declaration. One of the counts sought a recovery because of the alleged fact that the birds delivered by appellee to appellant were diseased and that therefore there was a breach of appellee's implied warranty of the fitness of the birds. The other count sought a recovery because of the appellee's alleged breach of an alleged express warranty that the birds had been vaccinated against fowl pox prior to the time of delivery.

(Hn 1) In order for appellant to establish a right to a recovery on the ground of a breach of the implied warranty of fitness it was not sufficient that appellant produce proof that the chickens became diseased after the delivery — but rather it was necessary that the appellant produce evidence that the birds were infected with disease at the time of the delivery (Hn 2) for the implied warranty of fitness relates only to the condition of the birds at the time of the delivery.

On this issue it was wholly undisputed in this record that the normal mortality for a normal healthy flock of laying hens is from 1% to 2% a month. Mr. Bob Anthony, a witness for appellee who holds a Bachelor of Science Degree and a Master's Degree in Poultry

Management and Production from Mississippi State University, who taught poultry management and production at Mississippi State University for two years, and who has had eight years practical experience in poultry management and production, testified that normal mortality in a normal flock of laying hens is approximately 2% per month.

Mr. Becker, an expert witness for appellant, testified that normal mortality in any normal healthy flock of laying hens is somewhere between 1% and 2% per month and that on his poultry farm it runs slightly under 2% a month. Appellant's wife testified that normal mortality in a normal healthy flock of birds would be between 1% and 2% per month. Appellant himself testified that normal mortality was about 1% per month.

In the light of this testimony it was undisputed in this record that if, at the time of delivery, appellant's flock of birds was a normal healthy flock of 2,000 birds that the normal mortality rate would be between 20 and 40 birds per month, or between 5 and 10 birds per week.

Further, it is established by the records kept by appellant's wife and by her testimony as a witness for appellant that during the first week the birds were on appellant's farm four birds died, during the second week two birds died, during the third week two birds died, during the fourth week four birds died, and during the fifth week three birds died. During the second month (April 1958) the birds were on appellant's farm, 37 birds died. Thus it was established by the record and not in any manner disputed that for two full months after delivery the mortality in appellant's flock of birds was normal or less than normal. Appellant himself admitted that for at least eight weeks mortality in the flock was normal or less than normal. His wife testified to the same effect and so did appellant's witness Becker.

Appellant's witness Becker further testified that the incubation period for cholera, blackhead, coccidiosis and

fowl pox, the four diseases appellant's chickens were alleged to have suffered from, would not be in excess of two weeks. Appellee's witness, Anthony, testified substantially to the same effect. Thus it is established by the expert witnesses for both appellant and appellee, and is otherwise undisputed, that if the birds delivered by appellee had at the time of delivery been infected with any one of the four diseases complained of that the flock of birds would have come down with the disease within a period of two weeks after delivery. It is undisputed that the mortality rate of the birds continued to be normal or less than normal for a period of time equal to four times the duration of the incubation period of the diseases complained of.

It is further established without dispute that no one of the four diseases complained of was a congenital disease or a condition which is inherent in chickens — rather such diseases are caused by bacteria, parasites, or virus which are carried by insects, wild birds, rodents, etc.

(Hn 3) The order of the lower court granting a new trial should be favorably considered on appeal and the action so taken by the lower court should not be reversed unless manifestly erroneous.

At an early date our Court aligned itself with practically all authorities in announcing the rule that the action of a trial court in granting a new trial should be favorably considered on appeal and should not be reversed unless the lower court was manifestly in error. In the case of Smith v. Walsh, 63 Miss. 584, this Court said: "We are unwilling to disturb the judgment of the lower court in granting a new trial upon the first verdict. The rule that the action of the trial court upon a motion for a new trial is to be favorably considered upon appeal, and supported unless manifest error appears, is peculiarly applicable where the new trial has been granted, since in such cases the rights of the parties are not

finally settled as they are where a new trial is refused, but another trial is had.''

Since it was first announced by this Court this rule has been consistently followed as evidenced by the decisions of the Court in Harper v. Mississippi State Highway Commission, 216 Miss. 321, 62 So. 2d 375, 377, and Long v. Magnolia Hotel Co., 236 Miss. 655, 111 So. 2d 645, 649. And in the recent case of Womble v. Miss. State Highway Com., 239 Miss. 372, 123 So. 2d 235, 236, our Court again said: ''The sole question presented on this appeal is whether the trial court erred in sustaining the motion for a new trial. The rule as universally announced in our decisions is that the action of the trial court upon a motion for a new trial is to be favorably considered upon appeal and supported unless manifest error appears or unless the action of the trial court in sustaining the motion shows a manifest abuse of his discretion, and the rule is particularly applicable where the new trial has been granted, since in such cases the rights of the parties are not finally settled as they are where a new trial is refused. Smith v. Walsh, 63 Miss. 584; Harper, et al v. Miss. State Highway Com., 216 Miss. 321, 62 So. 2d 375; Long v. Magnolia Hotel Co., 236 Miss. 655, 111 So. 2d 645, 114 So. 2d 667.''

The rule recognized by our Court is unquestionably the rule followed by practically all authorities. See 3 Am. Jur., Appeal and Error, Sec. 981, p. 539; and 5A C. J. S., Appeal and Error, Sec. 1619, p. 122, where the authors state that an appellate court will not interfere with the action taken by a trial court on a motion for a new trial ''except in exceptional cases and with reluctance''. And the authors in 5A C. J. S., Appeal and Error, Sec. 1619, p. 136, have also recognized that the rule is particularly applicable to cases such as the present case where complaint is made as to the action of the trial court in granting a new trial. There it is

said: "Appellate courts are more liberal in sustaining an order granting a new trial than one denying it, and an order granting a new trial is considered more favorably than one denying it, since an order granting a new trial never finally disposes of the rights of the parties, while a denial thereof may dispose of their rights."

(Hn 4) Thus the burden on this appeal is unquestionably upon the appellant to establish that the lower court was manifestly in error in granting a new trial. It would seem that this would be particularly difficult for appellant to do in this case in view of the fact that on a re-trial of the case a jury of appellant's peers returned a verdict for the appellee and appellant himself does not contend that there was any error whatever either on the part of the court or on the part of the jury in the third and last trial of the cause which resulted in a verdict for the appellee.

(Hn 5) The order of the lower court granting a new trial was justified because of the error of having submitted to the jury the issue of appellee's liability on the alleged express warranty that the birds had been vaccinated against fowl pox. To amount to a warranty the representation had to be made prior to the execution of the written contract for the purchase and sale of the birds. The appellee in its answer expressly denied that there was any contract between appellant and appellee which included a covenant or agreement on appellee's part that the birds would be vaccinated against fowl pox. Appellee's answer says that appellee "denies that any term or provision of the contract between the parties required that the defendant use care and caution to vaccinate said chickens against diseases usually prevalent in chickens without vaccination in this area, particularly fowl pox."

(Hn 6) Appellee did admit in its answer that at the time of delivery of the chickens appellee's agent advised appellant that the birds had been vaccinated against fowl

pox. However, such an admission does not constitute an admission that there was an express warranty that the birds had been vaccinated against fowl pox for before such a statement could amount to a warranty that the birds were vaccinated against fowl pox it was incumbent on the appellant to establish that the statement was made prior to the time that the contract was executed between appellant and appellee for the purchase and sale of the birds.

(Hn 7) It is well settled that statements made after the contract of purchase and sale had been executed do not amount to a warranty for there is no consideration to give such statement the essential element of a contract. In 46 Am. Jur., Sales, Sec. 300, p. 483, the author says: "A warranty, although a collateral contract, must form part of the transaction involving the sale. The courts are not inclined to construe as warranties affirmations by the seller made after the agreement for the sale, even though made before the article is delivered and the price paid. Thus, a statement by the seller of a vessel as to its sea worthiness after the contract of sale has been executed does not constitute an express warranty."

Substantially the same rule is stated in Mechem on Sales, Vol. 2, Sec. 1247, p. 1082, as follows: "The contract of warranty, like any other, requires to be supported by a sufficient consideration. Where the warranty is made at the time of and as a part of the contract of sale, the consideration which supports the latter contract suffices also for the former. Where, however, the warranty is not made as a part of the contract of sale, it is not binding unless made upon a separate and sufficient consideration."

See also 77 C. J. S., Sales, Sec. 309, p. 1135, where the authors say: "The operation of affirmations and promises with respect to goods as warranties includes, and, indeed is limited to such as are made at the time of

sale or during the negotiations for the sale; if made before the negotiations, or after the consummation of the sale, they are not available to the buyer as warranties, except where, on a new consideration, a subsequent warranty is annexed to the contract * * *.''

To the same effect is Williston on Sales, revised edition, Vol. 1, Sec. 211, p. 545, where it is said: ''If the seller's liability on a warranty is based on an agreement to contract, consideration is essential. Similarly, it is a requirement for the maintenance of an action on the case for deceit that the plaintiff has suffered a detriment because of his reliance upon the statement; and in an action of tort for a breach of warranty the same element is essential. If a statement was unknown to the buyer at the time the sale was completed; it is obvious that there can be neither consideration from the standpoint of the law of contracts nor detrimental reliance from the standpoint of the law of torts. Still more clearly if no representation or warranty was made at the time of the sale, a subsequent representation or agreement to warrant will be of no legal effect, unless new consideration is given for it. What constitutes new consideration depends on the general principles of the law of contracts. If the buyer was entitled to return the goods for any reason, or in good faith claimed such right, a warranty given to induce him to forbear to exercise it and to keep the goods is supported by sufficient consideration * * * . Unless the buyer has some right or color of right for refusing to pay the price, or some color of right to refuse proffered delivery of the goods, the acceptance of them is not consideration sufficient to support a warranty.''

A case in which the rule of law announced by the above authorities was applied was that of Richardson v. Landreth, 260 S. W. 128, 129, (Mo. App. 1924). There the plaintiff attended an auction sale and bid successfully on two horses. Before the horses had been de-

livered to him or the purchase price paid, plaintiff inquired as to whether the horses were sound and was assured that they were sound. The court held that this could not operate as an express warranty, saying: ''It is claimed by plaintiff that this constituted a warranty in the sale of the horse involved in this suit. It is quite evident that it does not. Unless the statement or representation is made by the seller contemporaneously with and as a part of the contract of sale, it does not constitute a warranty, unless it is supported by a new consideration.''

To the same effect is the decision of the Second Circuit Court of Appeals in the case of W & S Job & Co. v. Heidritter Lbr. Co., 255 Fed. 311, 3 A. L. R. 619, 620. There the plaintiff and the defendant by correspondence made a contract for the purchase and sale of a schooner. After the contract of purchase and sale had been made by correspondence the defendant delivered to plaintiff a bill of sale and collected from plaintiff the balance of the contract price. At the time of the delivery of the bill of sale the defendant assured plaintiff that the vessel was sound and sea worthy in every way. The court held that this did not amount to an express warranty, saying: ''Whatever was said by Mr. Wolff on this occasion could not be considered an express warranty for the sale was consummated by the exchange of the above letters and the parties were obligated to the contract there made. No representation made after that date as to the soundness or sea worthiness of the vessel would constitute an express warranty, for there was no new consideration. A contract of warranty requires a consideration. The consideration which supports this contract of sale was determined and agreed upon by the parties on March 4th. Any further or new warranty would require a separate and sufficient consideration.''

This Court has applied the same principle of law announced in the above authorities in its decision in the case of Pritchard v. Hall, 175 Miss. 588, 167 So. 629. In that case the plaintiff sought to show a modification of a written conditional sales contract by a subsequent oral agreement. Our Court held that since there was no consideration for the subsequent oral agreement it could not amount to a contract operating to modify the original contract of conditional sale. This Court said: "A written contract may be changed or modified by a subsequent oral agreement, provided that the new oral agreement is supported by an additional consideration. * * * We have searched this record in vain for the new or additional consideration moving from Hall to Pritchard & Hollowell, and find none. There remains nothing but the additional promise by appellant given in consideration of the original note."

Here the written contract of purchase and sale does not contain any agreement on appellee's part to cause the birds to be vaccinated against fowl pox. In the light of the above authorities, there can be no doubt that unless the statement regarding the vaccination of the birds was made before the written contract of purchase and sale had been executed that the statement could not amount to a warranty, for if the statement were made after the written contract was executed and not prior thereto, appellant would have had no right to refuse to accept the chickens even if they had not been vaccinated against fowl pox.

(Hn 8) The burden of proof was on appellant to establish by a preponderance of the evidence that the statement regarding the vaccination of the birds amounted to a warranty. The appellant as the plaintiff in the court below and as the party asserting a breach of warranty unquestionably had the burden of proof to establish not only the existence of the warranty but the breach thereof by a preponderance of the evidence.

To such effect see 77 C. J. S., Sales, Sec. 365, p. 1283. There it is said: "The burden of proof is on the party relying on a breach of warranty to show the warranty, the breach thereof, and that his loss resulted from the breach of such warranty."

Cited in support of the foregoing quotation is the decision of this Court reported as J. C. Penney Co. v. Scarborough, 184 Miss. 310, 186 So. 316, 317, where this Court said: "In order for the evidence to be sufficient to establish the breach of the alleged express warranty made by the sales clerk in this transaction, the plaintiff must prove: first, an express warranty; second, a consideration; third, scienter; fourth, inducement and reliance; fifth, the breach of warranty; and, sixth, the damage."

(Hn 9) Even if the proof had justified a finding that there was an express warranty that the birds had been vaccinated against fowl pox, still there was no evidence which would justify a finding that there was a breach of the warranty.

There is no dispute whatever in this record but that the flock of birds did not contact fowl pox until after September 1959 when Mr. Jones commenced inspecting the flock. It is further undisputed that there was no suspicion that the birds had fowl pox until October 5, 1959, when Mr. Jones inspected the flock and stated that the birds seemed to have fowl pox. Although appellant's wife and appellant testified, respectively, that five hundred or six hundred birds died from fowl pox, their own mortality records establish that this was wholly impossible since less than 400 birds died from all causes between October 1959 when fowl pox was first discovered and January 1960 when appellant disposed of his flock.

In the light of the facts as reflected by this record any finding that the birds had not been vaccinated would have had to be based entirely upon the unsupported

opinion of appellant and his wife as to the number of birds that died from fowl pox, which opinion is shown to be mere surmise and conjecture and wholly without basis in fact both by their own mortality records and by the testimony of the expert witnesses for both appellee and appellant.

(Hn 10) Warranty of fitness relates only to the condition of the property at the time of the sale. At no point in this case has appellee by its pleadings or testimony sought to deny that an abnormal number of birds in appellant's flock died from disease. Appellee's sole contention is that at the time the birds were delivered to appellant the birds were a normal healthy flock of birds which were not then infected with disease. If this position of appellee is borne out by the facts then there was no breach of implied warranty of fitness for all the authorities agree that a warranty relates only to the condition of property at the time of sale and does not cover future defects not in existence or inherent in the property sold at the time of the sale. To such effect see 77 C. J. S., Sales, Sec. 321, p. 1172, where it is said: "Unless otherwise expressed, a warranty relates only to the time of sale and does not cover future defects not then in existence or inherent in the article, and this is true although the contract is for future delivery. That is to say, a breach of warranty can be predicated only on a loss caused by a defect which existed at the time of sale although if then existent it need not be fully developed."

To the same effect is 46 Am. Jur., Sales, Sec. 398, p. 571, where it is said: "It is recognized as a general rule that unsoundness to constitute a breach of the warranty must have existed at the time of the sale, although it seems that undeveloped seeds of disease, like tuberculosis, glanders, etc., may render an animal or slave unsound as well as a disease which has actually de-

veloped. Mere predisposition to disease however does not constitute unsoundness.''

Substantially the same rule is stated in Williston on Sales, Rev. Ed., Sec. 212, p. 548, where it is said: ''It is said by Blackstone: 'The warranty can only reach the things in being at the time of the warranty made and not the things in futuro; as, that a horse is sound at the buying of him, not that he will be sound two years hence.' An understanding of Blackstone's meaning needs a recollection that the law of warranty originated in the action on the case for deceit.''

See also annotation in 53 A. L. R. 2d 892, 901, where the annotators say: ''Where at the time of purchase the animal was too young to be physically capable of breeding, the courts have refused to find an implied warranty that upon reaching maturity it would be able to reproduce. This too would seem to follow the same general reasoning as the foregoing cases where warranties are not implied because the seller had no better means of knowledge than the buyer on the point. The buyer's guess whether a young animal will mature into a fertile or potent adult is probably as good as the seller's.''

In Frederickson v. Hackney, 159 Minn. 234, 198 N. W. 806, the plaintiff purchased a bull calf from defendant at a time when the calf was only a few days old. When the bull grew to maturity it proved to be sterile and plaintiff sought a recovery from defendant on the ground of breach of an implied warranty that the animal would become a breeder at maturity. The court held that the law would not imply such a warranty saying: ''There can be no more appropriate occasion for the adoption of the rule of 'caveat emptor' than the sale of an immature animal, the principal value of which depends upon its later becoming a breeder. Sterility is the exception. Still there are many contingencies attending the adolescence even of brutes that would make it an

anomalous thing to impose upon a vendor, who parts with the possession and responsibility for the rearing of animal, the liability of having the sale rescinded in the event that, at maturity, the animal proves to be sterile. * * * Implied warranties ordinarily speak concerning the present and give assurance only as to qualities existing at the time being. They do not ordinarily speak of the future, nor of qualities later to be developed. That is the conventional field for express rather than implied warranty.

" 'The doctrine of implied warranty appears to be founded on an actual or presumed knowledge by the vendor, as manufacturer, grower, or producer, of the qualities and fitness of the things sold for the purpose for which it was intended or is desired, so far as such knowledge is reasonably attainable. The rule must be held to have a rational foundation, and to be not of a purely arbitrary character. It does not impute to the seller knowledge as to qualities or fitness which no human foresight or skill can attain, and raise an implied warranty in respect to them when the vendor and purchaser are in equal condition as to means of knowledge, or the latter must have understood from the nature of the case that the information, experience, and knowledge of the vendor are not superior to his own.' * * "While that statement may not sufficiently emphasize the seller's knowledge that the article will be valueless to the purchaser unless fit for a particular purpose, it shows the utter impossibility, in reason, of creating an implied warranty in a case of this kind, where neither party can know anything about what the future will prove concerning the particular qualifications expected and desired in the subject matter of the sale."

We are not willing to disturb the judgment of the lower court in granting a new trial upon the second verdict. There has been no manifest abuse of his discretion and we find no error.

238

We see no error in the third trial of the case in which the appellee obtained a verdict. Therefore, the case is affirmed, both on the second and third trials.

Affirmed.

*Lee, P. J., and Gillespie, Rodgers and Jones, JJ.,* concur.