254 So.2d 911 (1971)
RALSTON PURINA CO.
v.
Arlie R. HOWELL.
No. 46422.
Supreme Court of Mississippi.
November 29, 1971.
Ebb J. Ford, Jr., Gulfport, for appellant.
Cumbest, Cumbest & Shaddock, Ralph W. Pringle, Pascagoula, for appellee.
*912 ROBERTSON, Justice:
Ralston Purina Company appeals from a judgment for $12,847.88 rendered by the Circuit Court of George County against appellant and in favor of Arlie R. Howell.
Barry Talbert, a salesman for Ralston Purina, persuaded Howell on July 22, 1967, to enter into a contract with Ralston Purina, which contract provided, among other things:
 "1. The Manufacturer will sell to the
 Owner and the Owner will buy from
 the Manufacturer, such commercial
 feeds, tonics, disinfectants and
 worming medicines, the same to be
 the Manufacturer's brands, as are
 estimated to be required for all hogs
 or cattle covered by this contract
 from date of this contract until
 _________________________, 19__.
 (Cancellation date)
 The calculations of the Manufacturer
 shall be final.
 * * * * * *
 "3. The Owner will feed 500 
 number
 hogs on premises at
 animals
 Lucedale , in county of
 Town
 George , said premises belonging
 to Arlie R. Howell.
* * * * * *
"The Owner will:
(a) Give the Manufacturer, as each lot of such feed and other products is delivered, a note for the retail price thereof then prevailing, payable on or before the due date by check or money order payable only to the Manufacturer.
(b) Apply the Purina Program and use Purina Products to the exclusion of all other commercial products, in the care and feeding of the hogs or cattle."
During the latter part of August and early September, 1967, Howell purchased a total of 428 pigs and placed them in his ten new pens. Talbert, Ralston Purina's salesman, in accordance with the provisions of the contract regularly checked the feed tank and put in it for the automatic feeders the amount of Purina Hog Finisher Medicated that he (Talbert) deemed necessary. Howell depended and relied on Ralston Purina's knowledge and skill for the kind and amount of hog feed that he should purchase to finish and top his hogs for market. Purina hog feed was fed exclusively from about October 1 to December 5, 1967. During the last three weeks of this feeding period, 111 hogs became sick and died. On the advice of his veterinarian, Howell changed feeds on December 5, and the remaining hogs became healthy again and began to gain weight.
Ralston Purina sued Howell for the balance of $2,152.51 owed it for hog feed furnished according to the contract. Howell filed a counter-claim for the loss of the 111 hogs alleging that their deaths were due to bad feed furnished and delivered to the automatic feeders by Ralston Purina. Howell sued for $25,000 punitive damages and $15,000 actual damages.
The court instructed the jury to find for Ralston Purina for $2,152.51, the balance due on its open account with Howell. The jury was also instructed that this was not a proper case for punitive damages, but that the jury could consider actual damages sustained.
The jury returned a verdict for $15,000 actual damages, the exact amount sued for, but suggested that Ralston Purina be given credit for $2,152.12 on the $15,000 verdict. In accordance with the jury's verdict, the trial court gave judgment for $12,847.88 against Ralston Purina.
In reaching our decision, it will be necessary to discuss only two of the ten errors assigned, namely: (1) the court erred in refusing to instruct the jury that in Mississippi there is no implied warranty of *913 foodstuffs for animals; and (2) the instructions as to damages were incomplete and did not furnish the jury a proper guide for the ascertainment of damages.
Ralston Purina, the manufacturer, knew the purpose for which Howell would be using their feed. That purpose was to fatten and prepare his hogs for market. The contract calling for the exclusive use of Ralston Purina feeds, tonics, disinfectants and worming medicines was prepared by Ralston Purina. The kinds and amounts of Purina products to be used were to be determined, furnished and delivered by Purina. Howell relied on the knowledge, skill and experience of Ralston Purina. Purina Hog Finisher was sold and delivered direct from the manufacturer to the purchaser; there was no middleman. Therein lies the principal distinguishing feature from some earlier Mississippi cases. In those cases the animal feed was sold by a retailer who had bought the feed from the manufacturer. This Court held that there was no implied warranty where there was a middleman or retailer.
In Brown v. Murphee, 31 Miss. (2 George) 91 (1856), this Court held:
"There was an implied warranty that the machinery would answer the purpose for which it was constructed." 31 Miss. at 93.
See also, Foster v. Copiah County Co-Op., AAL., 246 Miss. 218, 148 So.2d 702 (1963); Harrist v. Spencer-Harris Tool Co., 244 Miss. 84, 140 So.2d 558 (1962); Missouri Bag Co. v. Chemical Delinting Co., 214 Miss. 13, 58 So.2d 71 (1952).
It appears to us that the same reasoning would apply to a manufacturer of animal feed who knew the purpose for which the feed was being purchased and also sold it direct to the purchaser. Courts of other states under similar circumstances have ruled that there was an implied warranty of fitness of animal feed. See Albers Milling Co. v. Carney, 341 S.W.2d 117 (Mo. 1960); Midwest Game Co. v. M.F.A. Milling Co., 320 S.W.2d 547 (Mo. 1959); Houston Cotton Oil Co. v. Trammell, 72 S.W. 244 (Tex. Civ.App., 1903), (reversed on other grounds) 96 Tex. 598, 74 S.W. 899.
Even though the Uniform Commercial Code did not become law until March 31, 1968, the Mississippi Legislature left no doubt as to its feelings about an implied warranty of fitness where the seller knew at the time of sale the particular purpose for which goods were being purchased, and knew that the buyer was relying on the seller's skill and judgment.
Mississippi Code of 1942 Annotated, Section 41A:2-315 (Special Supp. 1967), provides:
"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required, and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose." (Emphasis added).
Section 41A:2-317 says:
"Warranties whether express or implied shall be construed as consistent with each other and as cumulative, but if such construction is unreasonable the intention of the parties shall determine which warranty is dominant. In ascertaining that intention the following rules apply:
* * * * * *
"(c) Express warranties displace inconsistent implied warranties other than an implied warranty of fitness for a particular purpose." (Emphasis added).
Howell relied on Ralston Purina and placed his faith and trust in its superior knowledge and skill as the manufacturer. He contracted to use Purina products exclusively in fattening his hogs and preparing them for market. Ralston Purina checked the feed tank regularly, figured *914 quantities of hog feed needed and delivered this feed direct to the feed tank, all without consultation with Howell. He didn't even know the kind and quantity until he was billed by Purina. There was an implied warranty of fitness that Purina Hog Finisher would do the job and serve the particular purpose for which it was being purchased.
The testimony of Dr. McAdams, the local veterinarian, and Dr. Hottell, Ralston Purina's veterinarian, together with the strong circumstantial evidence that some of the hogs became sick and died while eating Purina's Hog Finisher exclusively, and the remaining ones became healthy again when taken off of Purina hog feed and fed other hog feeds, was sufficient to warrant the submission of damages suffered by Howell to the jury. We think that the jury was justified in returning a verdict for Howell on his counter-claim.
However, we think that the jury was not properly instructed on the elements of damages for which they could compensate Howell. The jury was left to search the record without a guide. The proper measure of damages would be the market price per pound that Howell would have received for the hogs that died.
The testimony was that he lost 111 hogs of an average weight of 180 pounds each. The market price at the time the hogs died was 20 cents per pound. So, multiplying the 111 hogs by 180 pounds and multiplying the total poundage by 20 cents per pound gives damages of $3,996.00. Deducting $2,152.51 from $3,996.00 leaves net damages of $1,843.49.
The judgment of the trial court is therefore affirmed as to liability, but reduced as to damages, and judgment rendered here for Howell for $1,843.49.
Affirmed as to liability, but reduced as to damages, and rendered.
RODGERS, P.J., and JONES, PATTERSON and INZER, JJ., concur.